**Henry JACOBOWITZ, Appellant,**

v.

**DOUBLE SEVEN CORPORATION,**
**Appellee.**

**No. 21372.**

United States Court of Appeals
Ninth Circuit.

June 5, 1967.

Daniel T. Bergin, Fennemore, Craig, Allen & McClennen, Phoenix, Ariz., for appellant.

Tom Roof, Randolph, Warner & Angle, O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, Jennings, Strouss, Salmon & Trask, Phoenix, Ariz., for appellee.

Before MERRILL and KOELSCH, Circuit Judges, and CURTIS, District Judge.

CURTIS, District Judge:

This is an appeal from an order of the district court affirming, with some modifications, an order of a referee in bankruptcy fixing fees for the trustee's attorney. The attorney requested an allowance of $11,410.00, but the referee allowed, and the district court approved, a fee of $7,500.00. The appellant here contends that the fee allowed was so low, under the circumstances, as to amount to an abuse of discretion.

After two hearings before the referee, during which considerable expert testimony was taken, the referee made the following findings of fact, conclusions of law, and order:

"FINDINGS OF FACT

"1. That all the allegations of the petitioner, Henry Jacobowitz, as contained in his two petitions pertaining to the allowance of his attorney's fees, are true as stated, including, among other things:

"(a) That over a period of more than three years he expended approximately three hundred forty-two (342) hours, plus four (4) full days of trial time before the United States District Court, in plenary proceedings, in performing legal services for the estate;

"(b) That he successfully prosecuted, in behalf of the estate, four plenary actions, one of which was tried to a jury, as a result of which he enhanced the assets of this estate by cash in the sum of $30,500.00;

"(c) That the defendants in the plenary proceedings were ably represented by prominent members of the local Bar and that the recoveries were difficult, not only because they involved intricate questions of law, but because the records of the bankrupt were inadequate and in many instances completely wanting and the trustee, as is often the case in proceedings of this nature, had to rely in main, on the testimony of the bankrupt whose interests were contrary to those of the trustee, and upon the testimony of the defendants on cross-examination;

"(d) That he obtained the withdrawal and waiver of certain creditors' claims aggregating in excess of $75,000.00 thereby increasing the

amount to be distributed pro rata among the remaining creditors by approximately $15,000.00.

"2. The petitioner exhibited great skill in meeting the intricate and difficult legal propositions encountered.

"3. The trustee herein, himself an attorney, testified that the fee prayed for by the petitioner is reasonable.

"4. The Creditors' Committee recommends the allowance of the fee as prayed for.

"5. The collective expert testimony of the attorneys who testified herein, all experienced and knowledgeable in this field, is to the effect that the fee as prayed for is reasonable and, in fact, on the low side.

"6. The minimum fee recommended by the Maricopa County Bar Association for work of this nature is $30.00 per hour, plus $250.00 per day in Court and the fee requested by applicant is predicated upon these rates.

"7. The total recovery herein amounts to $61,269.15; total fees and other administrative expenses as requested amount to $23,602.36, or 38.5% of the recovery; the total fees and other expenses allowed, including petitioner's fee in the amount of $7,-500.00, total $16,789.98, or 27.4% of the recovery. Cases of this size closed throughout the United States during the fiscal year 1965 were administered for a cost averaging 19.9% of the recovery, according to figures recently released by the Administrative Office of the United States Courts; costs for previous years range from 18.4% to 20.7%.

### "CONCLUSIONS OF LAW

#### I.

"The total fee of $11,410.00 asked by petitioner would be a reasonable sum for like services rendered by an attorney in private employment according to schedules of fees as recommended by the Maricopa County Bar Association.

#### II.

"The amount of compensation allowable in bankruptcy proceedings is not measured by the amount which counsel would have received for the same services in private employment.

#### III.

"The 'economical spirit of the Bankruptcy Act' demands that an attorney be paid in bankruptcy matters an amount appreciably less than he could command for similar services in purely private employment.

"Now, therefore, after again considering the matter and taking into account the size of this estate and the proportionate amount thereof recovered through the efforts of petitioner, the time expended by him in dealing with the matters involved, his ability and experience, the difficulty and intricacy of the legal propositions determined, the skill employed by petitioner, the opposition met, the opinions evidenced touching the reasonableness of the fee requested, all in the light of the limitation of the 'economical spirit of the Bankruptcy Act' and the total costs incurred in the administration of the estate as related to the size thereof,

"IT IS ORDERED that the previous allowance of $7,500.00 to the petitioner, plus expenses, remain in full force and effect."

Upon review the district court affirmed the referee's order, with the following modifications:

Paragraph II of the conclusions of law was modified to read as follows:

"The amount of compensation allowable in bankruptcy proceedings is not measured by the amount which counsel would have received for the same services in private employment but can be and frequently is less. The amount of compensation ordered by the Court depends on the circumstances of each case."

The first sentence of Paragraph III was deleted entirely.

After reading the referee's findings, which almost completely favor the appellant, it is difficult to conclude otherwise than that the requested fees were reasonable and should have been allowed. Since they were reduced, the district court must have been strongly persuaded by either one or both of two considerations, neither of which we believe to be valid.

In the first place, the referee in his findings refers to the statistical averages of administrative expense incurred in closing cases generally throughout the United States and finds that costs of closing this estate, even with a reduced fee allowed, exceeds the national average. To the extent, if any, the court below relied upon this data it would have been in error. Statistical averages may have some value in comparative studies of what courts have done, but they offer no proper basis for a conclusion which a court is about to make. Attorneys' fees, like other expenses of administration, vary widely, depending upon the circumstances and must be considered and determined on a case by case basis.

Secondly, it is apparent from Paragraph III of the referee's findings that he believed himself compelled by the economical spirit of the Bankruptcy Act to cut to an appreciable degree every request for attorneys' fees, no matter how low they might appear upon the scale of reasonableness when measured by private employment standards. Although the district court deleted this conclusion of law completely, it adopted the fee fixed by the referee in reliance upon this finding.

Admittedly, the economical spirit of the Bankruptcy Act is one of the considerations going into the determination of a reasonable fee in bankruptcy cases, but it is only one consideration to be weighed and valued along with others. There is, of course, no precise measure for reasonableness. The court in a given case fixes the fee after a consideration of various elements, which the referee's order correctly states as follows:

" * * * the size of this estate and the proportionate amount thereof recovered through the efforts of petitioner, the time expended by him in dealing with the matters involved, his ability and experience, the difficulty and intricacy of the legal propositions determined, the skill employed by petitioner, the opposition met, the opinions evidenced touching the reasonableness of the fee requested, all in the light of the limitation of the 'economical spirit of the Bankruptcy Act' and the total costs incurred in the administration of the estate as related to the size thereof, * * * "

Determining reasonable fees in bankruptcy cases is no different from determining them in private employment, except that the spirit of the Bankruptcy Act would seem to require a court to fix such fees at the lower end of the spectrum of reasonableness.

" * * * 'economical' is by no means synonymous with 'parsimonious' and should not exclude a compensation that is under all the circumstances of the case fair and reasonable. To reserve as much as possible for distribution to the creditors is one postulate, but there is another, perfectly compatible with the former, not to discourage needlessly able and competent lawyers from accepting a retainer in bankruptcy by denying them reasonable remuneration. A misunderstood economy in this respect may lead to evils far greater than the sacrifice imposed on the individual creditor by reason of an equitable allowance for meritorious and diligent counsel." 3 Collier on Bankruptcy § 62.12[5] page 1495.

We think that the economical spirit of the Bankruptcy Act does not require, nor justify, reducing a requested fee where, as here, by all other proper standards it is a fair and reasonable one, all expert witnesses have testified without contradiction that the fee was not only a reasonable fee but was on the low side, where the creditor's committee has recommended the allowance of the fee, and where the requested fee was based

upon the recommended minimum fee schedule of the bar association in the county in which the work was done. Under such circumstances we find the requirement of economy has been met and that the reduction is unsupported either by the law or the evidence.

■ Although we would normally remand for further consideration by the referee in the light of our ruling, since we have before us the findings which in our opinion support an award of the amount requested, we remand with directions to the referee to allow attorney's fees to the appellant in the sum of $11,410.00.

MERRILL, Circuit Judge (dissenting):

I dissent.

It is abundantly clear that the referee and the District Court have given full consideration to all relevant factors in fixing the fee in question. The majority simply disagrees as to the manner in which those factors have been balanced against each other.

It is upon such issues that reviewing courts, even while disagreeing with the court below, traditionally choose to defer to the lower court's judgment in its exercise of discretion. I would say that with reference to the weight to be given to the economical spirit of the Bankruptcy Act there are particularly impelling reasons for such deference. A balance must be struck between two competing interests: that the cost of bankruptcy should not itself consume the very res the proceedings are designed to protect; and that fees allowed be such as not to discourage competent counsel from active and effective participation. The local referee and judge are certainly best able to fix upon a fair balancing of these interests, and to ascertain the degree to which reduced fees may affect the ability to secure the services of competent counsel under the circumstances existing in the community.

Further, while the majority has emphasized the economical spirit of the

Bankruptcy Act as the apparent basis for reduction of fees, it is clear that the size of the estate involved was of significant concern to both referee and District Court. Fees as requested would raise the expense of administration of this estate to 38.5 per cent of recovery.

The majority seems to overlook the fact that where services are rendered to an estate from which compensation is to come, the modest proportions of the estate, if it is decently to survive administration, frequently compel the allowance of fees which under other circumstances would be regarded as wholly inadequate. It would be a reflection upon the ability of courts to engage in the administration of estates if the costs of court administration were such as to require undue depletion of the estate administered. If attorneys, as private practitioners, are to participate in such administration, they should be prepared to accept the fact that schedules regulating their voluntary fixing of charges may be found inappropriate in light of the size of the estate involved.

For these reasons I would affirm the District Court.