In re **PAJARITO AMERICAN INDIAN ART, INC., an Arizona corporation, dba Ashton Gallery, Bankrupt.**

In re Robert **ASHTON, Jr., Bankrupt.**

In re Sharon **ASHTON, Bankrupt.**

Bankruptcy Nos. B–77–1658–Phx–ED to B–77–1660–Phx–Ed.

United States Bankruptcy Court, D. Arizona.

May 28, 1981.

Lynn M. Pearlstein, Phoenix, Ariz., for debtors.

Howard C. Meyers, Gillenwater & Meyers, P. C., Phoenix, Ariz., for Trustee.

Marilyn Perry, Phoenix, Ariz., Trustee.

Dallas E. Hammond, Accountant.

## MEMORANDUM OPINION

WILLIAM A. SCANLAND, Bankruptcy Judge.

Hearings were held on various applications for fees on April 27, 1981. The following fees are allowed without comment.

Referee's Salary and Expense Fund, $12,835.71.

Receiver, $8,678.54; expenses of $369.70. Trustee, $6,013.08; expenses of $698.40. Court Reporter, $2,740.00.

Accountant, $726.95.

The attorneys for the Receiver and Trustee have previously made application and have been allowed interim fees at a lower hourly rate than the $85.00 hourly fee which they seek in their final application for fees. They seek $85.00 an hour for those hours which have previously been considered by the Court in allowing interim fees. This Court does not believe it should raise the hourly rate to $85.00 an hour for those hours previously spent where the attorneys charged $65.00 an hour and shall not do so. For such reasons, this Court allows the attorneys for the Receiver $2,638.50, and while acting as attorney for the Trustee, $7,490.00 and costs in the amount of $167.60. All of the foregoing the Court finds to be reasonable.

The attorney for the Debtor seeks fees in the amount of $20,650.50. His application for fees states that he spent a total of 317.7 hours between September 21, 1977, and January 2, 1979. He acknowledges that he has been paid the sum of $4,000.00 by the Debtor as reflected by his Bankruptcy Rule 219 Statement on file. The Court has spent a great deal of time examining this application. The Court has considered the Ninth Circuit case of *Jacobowitz v. Double Seven Corporation*, 378 F.2d 405 (1967), wherein they state as follows:

Admittedly, the economical spirit of the Bankruptcy Act is one of the considera-

tions going into the determination of a reasonable fee in bankruptcy cases, but it is only one consideration to be weighed and valued along with others. There is, of course, no precise measure for reasonableness. The court in a given case fixes the fee after a consideration of various elements, which the referee's order correctly states as follows: " * * * the size of this estate and the proportionate amount thereof recovered through the efforts of petitioner, the time expended by him in dealing with the matters involved, his ability and experience, the difficulty and intricacy of the legal propositions determined, the skill employed by petitioner, the opposition met, the opinions evidenced touching the reasonableness of the fee requested, all in the light of the limitation of the 'economical spirit of the Bankruptcy Act' and the total costs incurred in the administration of the estate as related to the size thereof, * * * "

Our Ninth Circuit Court in the matter of *Beverly Crest Convalescent Hospital, Inc.,* 548 F.2d 817 (1976), concluded that the attorneys' fees allowed in that case at a rate of $85.00 per hour were "grossly excessive and clearly erroneous, requiring us to reduce the allowance substantially." The Court reduced the hourly rate to $65.00 per hour for the hours expended.

This court directs our attention to *York International Building, Inc. v. Chaney,* 527 F.2d 1061 (9th Cir. 1975). This case held that:

> In view of claimant's wholesale exaggeration of his own claim, as well as that of Chaney, and of his personal participation in presenting many conflicting reports to the court, we hold that the award of the district court to Burgess is clearly erroneous and that it abused its discretion in making the award.

One of the better cases on attorneys' fees is *In re Grady (Appeal of Shors),* 618 F.2d 19 (8th Cir. 1980). This circuit court affirmed a bankruptcy judge's decision cited as *In re Grady,* 18 C.B.C. 96 (S.D.Iowa 1978). In an exhaustive opinion Bankruptcy Judge Stageman reviewed all of the elements that go into allowing reasonable attorneys' fees. He starts off with Bankruptcy Rule 219:

> "(c)(1) Factors in allowing compensation allowable by the court to a ... attorney ... shall be reasonable, and in making allowances the court shall give due consideration to the nature, extent, and value of the services rendered as well as to the conservation of the estate and the interests of creditors.
> "(c)(2) ....
> "(c)(3) attorney .... Compensation may be allowed an attorney ... only for professional services."

He cites among other cases *Jacobowitz v. Double Seven Corporation, supra,* stating the various elements that should be considered in allowing attorneys' fees in the Bankruptcy Court. He states:

> Compensation for service in matters collateral to or indirectly affecting the administration of the estate should not be allowed.

And:

> Attorneys can only be compensated for attorney work. Trustees must be compensated on a commission basis, ... (11 U.S.C. § 76), while attorneys are compensated at a reasonable rate for professional legal services performed.... (11 U.S.C. §§ 76, 80(b), 102a(1), and 104a(1)), B.R. 219(c)(3).

The matter before the Court at this time is an Act case commenced prior to the adoption of the Reform Bankruptcy Code.

Grady goes on to say that one of the most favored factors is the time spent by the attorney in performing duties. However, he points out that:

> Hours alone are a false criteria that can result in the reward of inexperience, inefficiency and incompetence. See Hornstein, Legal Therapeutics: *The "Salvage" Factor in Counsel Fee Awards,* 69 Harv. L.Rev. 658 (1956).

He also cites Herzog, *Bankruptcy Law—Modern Trends,* Journal of the National Association of Referees in Bankruptcy, Vol. 36, p. 57 (1962):

> Is an attorney to be penalized because his mental ability enables him to accomplish the same results in half the time it takes

his competent, but slower colleague? If number of hours employed is to have weight, then the court must first determine whether it was necessary to spend the amount of time claimed by the applicant. The test should be time "fairly and properly" necessary to deal with the case, rather than actual time logged. [citations omitted].

In a recent bankruptcy opinion, *G. W. C. Financial & Insurance Services, Inc.*, 8 B.R. 122 (1981), the bankruptcy judge held that reasonable attorneys' fees are not measured by services rendered but by "services reasonably necessary." This general theory was followed by this Court in *In re Ruck*, 4 B.R. 194 (1980).

This Court has gone over in great detail the appendage to the application for fees which sets forth the date, the amount of time spent, and generally what was done, but the record is totally deficient as to what actually was done at each of the times referred to in this appendage. Between September 21, 1977, and October 6, 1977, the applicant spent 141.20 hours presumably in preparing the petition in Chapter XI, and consulted with his clients. It should be noted that a receiver was appointed in this matter the next day following the filing of the petition on October 7, 1977, and thereafter attorneys were appointed for the Receiver. It is the duty of the Receiver/Trustee to collect assets of the estate and this Court finds that the Receiver/Trustee did not neglect her duty. Some of the examples which this Court questions whether the applicant's time spent with the Debtors was necessary are as follows:

September 21, 1977, 8.0 hours in conference with Bob and Sharon Ashton.

September 24, 1977, 9.3 hours in reviewing a partial Udall file, the Basha and Lyon documents, and a telephone conference with George Shaw. What benefit resulted to the estate of the Debtor by reviewing the Udall file and the Basha and Lyon documents is not clear.

On September 25, 1977, he states he had a telephone conference with Sharon Ashton, one of the Debtors, for a total of 6.5 hours, and following that a conference with Denny, Basha, Mallory and Sharon Ashton of 5.2 hours. The Court is unable to determine again why it was necessary to spend this amount of time on the stated matters.

On September 26, 1977, he allegedly spent 5.5 hours in a conference with creditors and Sharon Ashton, Pete and Hannah Swearingen. This Court cannot determine why.

On September 28, 1977, 9.5 hours were spent in a conference with Sharon Ashton, Holstein, Bob Steiner, Jim Brook, Denny Lyon, as well as a telephone conference with Mallory and Pletka of 1.0 hour, a telephone conference with Robert Musser re New Mexico property of .4 hour, a half-hour telephone conference with Dean Young and a conference with Dick Mallory for .4 hour. There is no evidence and no explanation of why this time was spent and whether it was necessary to prepare and file a plan or contribute anything to the administration of the estate.

On October 1, 1977, he allegedly spent 10.0 hours in a telephone conference with Pletka, Musser, Lyon and a creditors group, and the next day 7.5 hours in a telephone conference with Sharon Ashton, Paul Pletka, John Jennings and Bob Ashton. This Court has never heard of such long conference calls.

On October 3, 1977, he spent the total of 14.6 hours in various activities. It seems clear that he did not have the schedules filed even when he filed his petition because following the filing of the petition on November 10, 1977, he spent 4.8 hours in research and preparation of schedules. Clearly the Debtor's counsel spent time that was unnecessary to prepare a petition in Chapter XI.

He put many hours a day into this activity culminating with the expenditure of 16.0 hours on October 18, 1977, on a conference concerning the Ashton deposition and a conference with Sharon Ashton re preparation of the statement of affairs and schedules and organization of records.

The schedules reflect approximately 100 unsecured and 8 secured creditors.

Between October 6, 1977, and September 19, 1978, he spent a total of 176.50 hours.

On July 27, 1978, Debtor's attorney states he spent 1.0 hour in a telephone conference with Jim Brook re: Terasaki complaint objecting to discharge. He further states on November 7, 1977, he had a .5 hour telephone conference with Bob Ashton re: Terasaki and Holubar, and on November 8, 1977, a 2.0 hour telephone conference with Bob & Sharon Ashton, Fred Steiner re: Terasaki. On December 1, 1977, he had an .8 hour telephone conference with one Phil Holstein re: Terasaki. It is clear that services rendered to prevent the denial of a discharge of a debtor cannot be paid by estate moneys. See *Lewis v. Fitzgerald*, 295 F.2d 877 (10th Cir. 1961). It should be noted that the Debtor and his attorney first discussed a plan in the Chapter XI proceedings on November 9, 1977. He reports a conference with Bob Ashton of 3.2 hours. Thereafter he spent some 29 hours developing a plan which resulted on January 12, 1978, in a telephone conference with Fred Steiner and Powell Gillenwater about converting the Chapter XI proceedings to straight bankruptcy. The plan was filed on December 13, 1977, but by minute entry on January 16, 1978, the Debtors were adjudicated Bankrupts by the Court.

Objections were filed to the discharge of the Debtor which resulted in his discharge being denied. He also was indicted which resulted in a conviction or a plea of guilty of a crime. The applicant stated he did not include any time on these matters in his application for fees. However, on February 1, 1978, he states he had a telephone conference with John Brook re: creditors and a/g's investigation. This Court presumes that the a/g investigation means the Attorney General of the State of Arizona was conducting some type of investigation. The estate moneys cannot be used to pay the Debtor's attorney in representing him when he has been charged with a crime.

This Court finds that the time expended for preparation of the petition in bankruptcy, statement of affairs, schedules, and the plan is excessive and a great portion of it was expended unnecessarily. *In re Grady, supra.*

The Court further finds that a large amount of the time was spent not on professional legal services but on matters which were handled by the Receiver or Trustee or their attorney. Judge Learned Hand in *In re Eureka Upholstering Co., Inc.*, 48 F.2d 95 (2nd Cir. 1931) stated that:

> [I]t would seem scarcely necessary to say that the receiver or trustee, and he alone, can recover for services in collecting the estate.

He goes on to say:

> [T]he line is not always easy to draw, but it is there, and referees should draw it straitly, else the estate will be burdened with a duplication of charges.

This Court finds there is no evidence that the attorney for the Debtors contributed to the recovery of approximately $292,000.00 in the estate. The Receiver/Trustee and her attorneys have been paid reasonable fees for these services. The *Grady* case, *supra*, goes on to say that Bankruptcy Rule 219 provides "compensation may be allowed an attorney . . . only for professional services." That:

> It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.

This Court believes that the attorney for the Debtors in this particular matter should be compensated for the following general matters:

1. Preliminary phase of consultation.

2. Preparation of petition and schedules in Chapter XI.

3. Negotiations with creditors although there is no evidence of any problems with secured creditors.

4. First meeting of creditors.

5. Preparation of plan.

6. Discussion with creditors concerning possible objections to the plan.

7. Adjudication and resultant Chapter VII proceedings.

This Court finds that an attorney worthy of $65.00 an hour could have performed all of the necessary legal services on behalf of the Debtor in a total of 150 hours at $65.00 an hour. This would result in an attorney's fee in the amount of $9,750.00 which the Court believes to be reasonable and meets the criteria of the various Ninth Circuit cases allowing reasonable attorneys' fees.

This Court finds that the attorney should be paid the balance of $5,750.00, and the Trustee is authorized to pay this sum.

The Trustee's application for authorization to offer the books and records to the Bankrupts, if refused by them to Internal Revenue Service, if refused by them then to be destroyed, is allowed, giving the parties thirty (30) days in which to claim the books and records.

Dated: May 28, 1981.