48 B.R. 965 (1984)
In re Alberto DUQUE, Debtor.
No. 83-2332-CIV-ALH.
United States District Court, S.D. Florida.
November 20, 1984.
*966 R. Thomas Farrar, Holland & Knight, Miami, Fla., Goldstein & Manello, Boston, Mass., for appellants.
David M. Levine, Miami, Fla., for appellee.

OPINION AND ORDER ON APPEAL
HASTINGS, District Judge.
This bankruptcy appeal presents the question whether a Chapter 11 debtor-inpossession *967 may employ and use estate funds to pay criminal counsel in connection with federal investigation and potential defense of criminal charges against the debtor arising out of pre-bankruptcy activities. The Court concludes that estate funds may not be so used and reverses the order authorizing employment of criminal counsel.

THE FACTS
The facts are neither complex nor disputed. On May 18, 1983, ALBERTO DUQUE (the debtor) filed this and related corporate Chapter 11 proceedings claiming assets of $50 million and liabilities of $100 million. About ten days prior to the petition appellant SHAWMUT BOSTON INTERNATIONAL BANKING CORPORATION had sued Duque in New York seeking $34 million damages based upon alleged fraud.
Shawmut's allegations were serious and were so regarded by Duque. The facts alleged apparently would support unstated violations of federal criminal law, including mail fraud, wire fraud, criminal use of false bills of lading, conspiracy and RICO, as well as obvious state law crimes. On May 12, 1983, nearly a week prior to filing the bankruptcy petitions, Duque hired James Jay Hogan as criminal counsel and paid him a $75,000.00 retainer.
Seeking such counsel was justified on May 24, 1983 when Duque's bankruptcy counsel was contacted by FBI agents requesting an interview. They were referred to Hogan whom they advised that Duque and four affiliated entities were subjects of a federal criminal investigation.
On July 15, 1983 Duque's bankruptcy counsel applied ex parte, with subsequent notice to creditors, and received authorization for the Chapter 11 bankruptcy estate to retain Hogan as special criminal counsel, nunc pro tunc to May 18, 1983, the date of the bankruptcy petition. The bases for the application were that Hogan had been advised by the FBI that Duque was the subject of the criminal investigation, that Duque claimed an absolute and constitutional right to employ Hogan as special criminal counsel, and that such employment was in the best interest of Duque, the estate and his creditors.
At least two creditors disagreed. On July 21, 1983, Shawmut moved for rehearing and to vacate the order, as did Credit Lyonnais-Panama. On August 9, 1983, the bankruptcy court denied the motion, 33 B.R. 199, and this appeal ensued.
The Court takes judicial notice that on November 15, 1984, Duque in fact was charged along with eleven other individuals in a 95 count indictment. The specific charges are conspiracy (18 U.S.C. § 371), bank embezzlement and misapplication (18 U.S.C. § 656), making false statements on loan applications (18 U.S.C. § 1014), mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and fraudulently making and uttering false bills of lading (49 U.S.C. § 121).

Jurisdiction and Standard of Review
The initial issues presented by this appeal involve this Court's jurisdiction. The first is to determine whether the order is appealable. If so, the second is to determine the specific basis of this Court's jurisdiction, which in turn will determine the standard by which the review should occur.
Because of uncertainty as to the appealability of the order, Shawmut filed both a notice of appeal under Bankruptcy Rule 8001 and a motion for leave to appeal under Bankruptcy Rule 8003. Under Section 24a of the Bankruptcy Act, the present order would have been regarded as entered in a "proceeding in bankruptcy" and would have been appealable as of right regardless whether it were interlocutory or final in nature. See 2 Collier in Bankruptcy, ¶ 24.14 (14th ed. 1976). Under the 1978 Bankruptcy Code, the distinction between "proceedings" in bankruptcy and "controversies" in bankruptcy has been abolished, *968 and more traditional tests of finality versus interlocutory have been employed. See 1 Collier in Bankruptcy, ¶ 3.03[7] (15th ed. 1984). Final orders are appealable as of right under Bankruptcy Rule 8001(a), but interlocutory orders are appealable only with leave of the district court under Bankruptcy Rule 8003. This Court concludes that the order appealed from is interlocutory, so that the Court will consider whether to exercise its discretion and allow the appeal.
It has been suggested that 28 U.S.C. § 1292(b) provides an analogue to the present framework. Id. at ¶ 3.03[7][v]. This analogy is not wholly perfect in its application to bankruptcy cases, since within each case there are adversary proceedings as well as controversies and other administrative matters, each of which is dispositive of aspects of the case and as to which there may be no reason of judicial economy or otherwise to delay appeal. On the contrary, resolving administrative matters with some finality, in the sound discretion of the district court in its appellate capacity, can expedite ultimate disposition of the bankruptcy case and is consistent with the goal of speedy termination of such cases.
The instant order was the subject of rehearing in the bankruptcy court and appears to involve a controlling question of law as to which there is a substantial ground for difference of opinion and as to which an immediate appeal may advance the ultimate termination of the bankruptcy proceedings. To leave the issue unresolved as the case presumably progresses toward reorganization may delay or provide uncertainty as to amounts available under any plan. Additionally, this appeal is wholly dispositive of the validity of the Hogan employment and any resulting fee, and no purpose is served by delaying the appeal. Indeed, it would be manifestly unfair to require Mr. Hogan to continue working with uncertainty as to his right to be paid.
Based upon the foregoing factors, the Court will exercise its discretion under Bankruptcy Rule 8003 and grant Shawmut's motion for leave to appeal. In a recent decision which is factually similar to the instant case, Official Committee of Disputed Litigation Creditors v. McDonald Investments, Inc., 42 B.R. 981 (N.D.Tex., 1984), leave to appeal was likewise granted in order to determine the appeal on an expedited basis. Before proceeding to the merits, however, the Court must determine the applicable standard of review.
This appeal was filed under the "Emergency Rule" in effect during the period between the Supreme Court's Marathon decision invalidating jurisdictional aspects of the Bankruptcy Reform Act of 1978, see Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and reconstitution of bankruptcy court jurisdiction by the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98-353. Those 1984 Amendments were enacted July 10, 1984, and under section 122 of that Act the jurisdictional changes were effective immediately.
Under the "Emergency Rule" this Court's review is essentially de novo. It may hold a hearing, receive evidence, accept, reject, or modify wholly or in part the appealed order, and it need give no deference to any findings of the bankruptcy judge. Under the jurisdiction provided by the 1984 Amendments the Court's review is taken in the same manner as appeals in civil proceedings generally, but as to "related proceedings" the review procedure is de novo. Under 28 U.S.C. § 157 as established by the Amendments, the instant case would involve a "core proceeding" reviewed in the general manner rather than de novo. Accordingly at first blush this appeal would appear to be reviewable de novo if the "Emergency Rule" applies but under the ordinary appellate review principles set forth in Bankruptcy Rule 8013 if the 1984 Amendments apply retroactively to it.
*969 In this appeal the parties have relied upon the available record and essentially undisputed facts. Neither party has suggested the necessity for this Court to hold any hearings or receive any evidence. Accordingly the Court does not regard that there would be any meaningful difference between the de novo appeal contemplated by the "Emergency Rule" and an ordinary appeal presenting issues of law on undisputed facts. See Matter of Multiponics, Inc., 622 F.2d 709, 713 (5th Cir.1980) (issue of law freely reviewable). For that reason the Court need not determine whether the "Emergency Rule" in effect at the time of the proceedings below and commencement of the appeal is applicable or whether the 1984 Amendments would apply retroactively. Under either review procedure and standard this Court would reach the same result on the merits to which it now proceeds.

Estate Funds for Criminal Counsel
Shawmut argues that there is no authority for use of estate funds for criminal counsel under the Bankruptcy Code, and that such an expense neither benefits the estate nor is necessary to preserve any constitutional rights of the debtor. Duque argues that authority to do so can be implied from Code provisions, and that criminal counsel is necessary to protect the debtor's constitutional rights.
Surprisingly, there is little case law on this seemingly not uncommon point. Thus the parties' arguments have proceeded on two planes: first a general analysis of the framework and specific provisions of the Code as they bear on the issue; and secondly with respect to the meager case law on point. The arguments essentially are as follows.

The Statutory Framework
Shawmut posits that upon the filing of a Chapter 11 proceeding a new entity is created. At that point, there is Alberto Duque, the debtor, and Alberto Duque, debtor-in-possession, armed with the powers and saddled with the responsibilities of a trustee in bankruptcy. [References in the Code to a trustee unless otherwise stated thus apply to Duque in his status as debtor-in-possession. 11 U.S.C. § 1107(a).] In this latter status, the debtor-in-possession marshalls the assets in existence at the time of the filing into the bankruptcy estate, uses available law to increase them further through a trustee's "avoiding powers" (11 U.S.C. § 544) or through actions to recover preferences or fraudulent conveyances (11 U.S.C. §§ 547, 548), administers the business interests of the estate, and presumably distributes the assets to creditors through a plan of reorganization.
Alberto Duque the debtor continues in his original status, but upon filing the bankruptcy petition becomes subject to certain duties. He gives up his property except for that which is exempt, files schedules of assets and liabilities, files periodic reports during the administration, cooperates with a trustee if appointed, may share in assets if any remain after satisfying creditors' claims, and in the absence of proven objections to discharge (11 U.S.C. §§ 523, 727, 1141), is discharged of his pre-petition liabilities, thus receiving the so-called "fresh start."
The basic premise of Shawmut's argument is that under this framework there are separate entities with separate properties. The property of the estate of the debtor-in-possession is administered for the benefit of creditors, and the debtor has no right to those assets until all claims are paid under a confirmed plan of reorganization. Conversely, the creditors may only use pre-petition assets to satisfy their claims, and any post-petition earnings of the debtor are his to keep. By the same token, reasons Shawmut, liabilities and expenses of the estate versus those of the debtor personally are separate. The expense of preserving estate assets is borne by the estate. Expenses to serve some personal interest of the debtor are his.
*970 The analogy offered by Shawmut is to expenses incurred by a debtor in defending challenges to his dischargeability. Although there was some authority to the contrary under the Bankruptcy Act, the weight of authority, unchanged by the Bankruptcy Code, was that services rendered in preserving the debtor's discharge were for the purposes of exercising a personal privilege of the debtor rather than performing legal duties. Attorneys' fees in defending such actions are not compensable from the estate. See Matter of Jones, 665 F.2d 60 (5th Cir.1982); Lewis v. Fitzgerald, 295 F.2d 877 (10th Cir.1961); In re Rothman, 85 F.2d 51 (2d Cir.1936); In re Epstein, 39 B.R. 938, 11 B.C.D. 1280 (Bkrtcy.D.N.M.1984); but see Matter of Gray, 7 C.B.C. 571 (1975). It is Shawmut's position that the expense of Mr. Duque's criminal defense of potential crimes arising out of pre-petition activity, like the expense of preserving his right to a discharge, is personal to Mr. Duque, of no interest to his creditors nor of benefit to the estate, and therefore not compensable out of estate assets.
Mr. Duque and the bankruptcy court disagreed. In the application for authority to employ criminal counsel, Duque submitted that he had an absolute and constitutional right to employ Hogan and that such employment is in the best interest of the debtor, his estate and creditors. In its ex parte order authorizing the employment, the bankruptcy court concluded that the employment was in the best interests of the debtor, its estate and creditors. In its order denying the motion to vacate, the court concluded that it found nothing in the Bankruptcy Code denying the debtor the right to use the estate assets for that purpose and that it could not believe the debtor's right to counsel in criminal proceedings should be denied or restricted as a condition to relief under Chapter 11.
The debtor takes the position that the bankruptcy court had the authority to appoint special counsel under 11 U.S.C. § 327(e), and that the appointment will assist the debtor against potential claims for criminal fines, forfeitures and penalties, thus potentially conferring a benefit upon the estate. The debtor argues that the presence of criminal counsel permits active participation by the debtor in the administration of the estate by assuring his assistance in marshalling assets and objecting to claims. The debtor further suggests that such counsel could assist in avoiding potential RICO forfeitures of estate assets. The debtor also argues that criminal counsel protects Duque's constitutional rights to counsel and against self-incrimination, particularly in the event a subsequent trustee should decide to waive them.
Both parties have presented their differing arguments as to the applicability of the specific Bankruptcy Code sections dealing with employment of counsel and as to various cases applying them. Both parties agree that the specific provision is section 327(e), which provides:
The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.
Shawmut argues that this section is to be read together with section 330, which provides for reasonable compensation to an attorney appointed under section 327 only for "actual, necessary services." Read together, Shawmut urges, the sections would permit hiring special counsel only where there is an actual need, as opposed to a hypothetical or potential benefit which may be realized.
Section 327(e) is to be distinguished from section 327(a) under which an attorney may be employed "to represent or assist the trustee in carrying out the trustee's duties" under the Bankruptcy Code. The *971 debtor does not suggest his present counsel are incapable of advising him how to carry out his present duties without violating criminal laws. Rather, the debtor relies upon 327(e), the special counsel provision which, it should be noted, specifically precludes employment of special counsel "to represent the trustee in conducting the case."
Under section 327(e), Mr. Hogan was properly employed as special counsel, if he were (1) an attorney that has represented the debtor, (2) if the employment is in the best interest of the estate, (3) if he holds no adverse interest, and (4) if the purpose is a specified, special one other than to represent the trustee in conducting the case. Under sections 331 and 330, the retainer Hogan received was authorized only if it were for actual, necessary services to the estate.
Shawmut argues that the purpose of the bankruptcy laws, the intended use of section 327, and the cases authorizing use of special counsel, preclude use of assets of the estate to provide criminal counsel for the debtor. Shawmut first points to the fact that criminal actions are permitted to proceed regardless of the automatic stay of section 362 of the Code. The legislative history of the Code states:
The bankruptcy laws are not a haven for criminal offenders, but are designed to give relief from financial over-extension. Thus, criminal actions and proceedings may proceed in spite of bankruptcy.
H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 342 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6299. See also 11 U.S.C. § 362(b)(1). The Eleventh Circuit has affirmed that intent:
The purpose of bankruptcy is to protect those in financial, not moral, difficulty. The bankruptcy courts were not created as a haven for criminals.
Barnette v. Evans, 673 F.2d 1250, 1251 (11th Cir.1982). Under section 362(b)(1) of the Bankruptcy Code, commencement or continuation of a criminal proceeding is expressly permitted.
The debtor rejoins that special counsel are occasionally employed to assist the debtor's general counsel in specialized legal areas. Examples cited by the debtor include matrimonial, labor law, tax and investigative counsel. In re Colin, 27 B.R. 87 (Bkrtcy.S.D.N.Y.1983); In re Pacific Homes, 20 B.R. 729 (Bkrtcy.C.D.Cal.1982); In re Modern Dairy Farms No. 1, Inc., 19 B.R. 322 (Bkrtcy.M.D.Fla.1982); In re Liberal Market, Inc., 24 B.R. 653 (Bkrtcy.S.D. Ohio 1982); and In re Fondiller, 15 B.R. 890 (Bkrtcy.App.Pan. 9th Cir.1981). Criminal law and conducting a criminal defense against criminal charges, argues Duque, call for specialized legal representation covered under section 327(e).
Shawmut distinguishes the above cases as representing instances where special counsel was retained for services specifically relating to the res of the bankruptcy estate. Thus, for example, in Colin the special counsel was prohibited from performing services related to the dissolution of marriage, rather than disposition of the parties' property. In each of the other cases there is similarly a direct relationship of the needed services to the estate or its property.

Case Law
The debtor's principal reliance is upon Matter of Investors Funding Corp. of N.Y., 422 F.Supp. 461 (S.D.N.Y.1976). In Investors Funding the trustee in a Chapter X proceeding retained a law firm to represent him in criminal proceedings in another district, and counsel was awarded fees for such services. In that case, however, the court noted that its order permitted counsel to represent the trustee and the estate only as witnesses.
There appears to be a substantial difference in permitting counsel to represent the trustee in a witness capacity in criminal proceedings as opposed to representing the *972 debtor, albeit coupled with the power of a trustee, as the potential defendant in criminal proceedings. The distinction is whether the estate rather than the individual debtor is interested in the proceedings and benefited by the representation. This is borne out by the other cases in point.
First is In re Pajarito American Indian Art, Inc., 11 B.R. 807 (Bkrtcy.D.Ariz.1981). Pajarito involved a Chapter 11 case in which a trustee had been appointed and the debtor's attorney, who had been retained to institute the bankruptcy case, sought compensation for his services. During the case, objections to the debtor's discharge were filed, resulting in denial of his discharge, and the debtor also was indicted and convicted in a criminal court on a plea of guilty.
Citing Lewis v. Fitzgerald, 295 F.2d 877 (10th Cir.1961), the court held that any time spent to attempt to prevent denial of the discharge could not be paid out of estate moneys. As to the criminal matters, the attorney applicant stated that he did not include any time for them in his application. The court noted, however, that a telephone conference was included, which the description indicated was in regard to an investigation by the state attorney general's office. That led the court to state: "The estate moneys cannot be used to pay the Debtor's attorney in representing him when he has been charged with a crime." Id. at 811. The court did not, however, elaborate further on that point.
In In re Delk, 27 B.R. 86 (Bkrtcy.W.D. Okla.1983), use of estate funds in connection with criminal matters again was discussed. In Delk, a Chapter 11 debtor applied for leave to enter into a fee agreement whereby estate moneys were proposed to be used to pay fees for the debtor in defense of an indictment pending in the district court. Without discussion, the court held that use of funds from the estate to pay for defense of our indictment "is not authorized by 11 U.S.C. § 327(a) in that it does not relate to duties under title 11 U.S.C." Id. at 87.
Neither the Pajarito nor Delk decisions included any substantial discussion of the rationale for their conclusions that estate moneys cannot be used for defense of criminal charges. Pajarito simply stated the proposition, and Delk only explained that following arguments of counsel the court found and concluded that criminal defense did not relate to duties under the Bankruptcy Code. Two other cases have addressed the issue in greater depth.
In In re Tashof, 33 B.R. 225 (Bkrtcy.D. Md.1983), a Chapter 11 debtor-in-possession sought to retain a securities law firm as special counsel in connection with a Securities and Exchange Commission investigation and possible criminal proceedings. The debtor was authorized to retain one law firm under a general retainer under section 327(a). A second SEC law firm had been representing the debtor prior to the filing in connection with an SEC investigation involving the debtor's efforts to obtain funds in connection with his ownership of certain real property.
Certain of the debtor's scheduled creditors held notes in connection with the same property regarding which the SEC investigation appeared to center. The proposed retainer letter from the SEC law firm stated that based on its experience and knowledge of the facts, it was believed that the SEC would file an action against the debtor and that there was a real possibility the matter would be referred by the SEC to the Department of Justice for possible criminal prosecution.
The Tashof court's analysis began with the language of the Bankruptcy Code, in particular section 327. The court noted the anomalous issue presented whether the court should authorize employment of the SEC firm in connection with a possible criminal prosecution growing out of fund raising activities from scheduled creditors who:
are in the position of once having transferred money to Mr. Tashof and now being called upon to finance the defense *973 of a criminal prosecution in which they might be the complaining witnesses.
Stated differently, the issue is whether the work of the SEC firm assists the debtor-in-possession in carrying out his duties under the Chapter 11 [11 U.S.C. § 327(a)] and whether the employment of the Zeidman firm is in the best interests of the estate [11 U.S.C. § 327(e)]. Lest there be any mistake, the court has no quarrel whatsoever with the law firm retained. The question is simply whether the expense of its representation ought to be borne by the individuals who are reluctantly interested parties in the court as a result of the actions of the debtor, Joseph H. Tashof.
The Tashof court, having stated the issue, next noted the lack of guidance in textbooks or decisions regarding the factors to consider in authorizing employment of special counsel. It also noted the significance of such authorization, in that an authorizing order places counsel in a first priority position as a claimant against estate property. 11 U.S.C. § 507(a)(1).
The court next observed the decision in Pajarito, supra, but the absence of any explanation for the decision in Pajarito and the fact it was a straight bankruptcy led the court to conclude that the Matter of Colin case, supra, relied upon by the debtor herein, was more appropriate. In analyzing Colin, however, the Tashof court reached the conclusion opposite that urged by the debtor herein, distinguishing the case essentially upon the grounds that Shawmut has sought to distinguish it before this Court.
The Tashof court noted first that in Colin "the court found that the retention of counsel was to protect estate property. . . ." 33 B.R. at 228. It specifically pointed out, as does Shawmut, that Colin authorized only services in connection with disposition of property and not the dissolution of marriage.
The Tashof court further distinguished Colin by noting that in the case of special criminal counsel the individual debtor and not the estate is being protected:
[T]he estate per se has no interest in whether or not Mr. Tashof faces criminal charges. Whether the SEC prosecutes Mr. Tashof or whether he may engage in further activities in the securities industry would not matter less to the unsecured creditors. The only thing that the employment of special counsel could produce for the unsecured creditors is additional expense. . . .
33 B.R. at 228-29. These thoughts are echoed in the instant case, where Shawmut suggests the creditors "care not a whit" whether Duque is prosecuted or convicted.
On another note Tashof supports Shawmut's arguments in this Court. The debtor has argued that Hogan's presence as criminal counsel ensures Duque's "continued overall direction and active participation" in the reorganization process and will "facilitate the Debtor's availability" to assist in marshalling assets. Tashof points out that the "same argument could be made if the debtor were charged with arson." Id. at 229.
Indeed, since section 362(b)(1) specifically permits criminal proceedings notwithstanding filing of bankruptcy, it is difficult to perceive how the bankruptcy estate would be affected by the criminal process, at least as a general proposition and absent unusual circumstances where estate property may be at stake. If the Code purports to operate apart from and leave unfettered the criminal processes, the trustee's duties and estate's property are presumably unaffected, or at least are to be regarded as dichotomous.
Another recently decided but as yet unreported case supports Shawmut's position. In Official Committee of Disputed Litigation Creditors v. McDonald Investments, Inc., 42 B.R. 981 (N.D.Tex.1984), creditors of a Chapter 11 debtor appealed (pursuant to leave granted, as by this Court, under Bankruptcy Rule 8003) an order authorizing expenditure of funds from the bankruptcy *974 estate for criminal counsel. In McDonald the debtor had been charged in another state with securities fraud, and as in Tashof and the instant case, the complaining witnesses were creditors of the estate.
The debtor's pre-bankruptcy criminal counsel sought and received authority to be employed by the estate for purposes of conducting the criminal defense. The debtor testified that he had no assets other than those under bankruptcy jurisdiction to use to pay counsel. The bankruptcy court in granting the authorization found that it would require substantial time for other counsel to prepare an effective defense to the criminal complaint, that to deny the expenditure would deprive the debtor of various constitutional rights, and that the employment was in the best interest of the estate because of probable availability of collateral estoppel upon conviction which could be used to obtain a judgment that likely would exceed the estate's assets.
As this Court has done, the McDonald court first looked to the Bankruptcy Code and case law for guidance as to whether such an expenditure is permissible under the Bankruptcy Code. It found a split of authority on the issue, but the only case it cited in support of using estate funds to pay for a criminal case was the bankruptcy court's decision in this case, reported at 33 B.R. 199. Obviously, this Court cannot by a form of judicial "Catch 22" rely upon the decision below for authority, not even for such deference as a lower court ruling would ordinarily receive, given the "Emergency Rule's" provision that no such deference need be given and this Court's ability to decide the issue itself as a matter of law.
Although McDonald concluded employment of criminal counsel is allowable under the Bankruptcy Code, the McDonald court nonetheless reversed the bankruptcy court and remanded with directions to deny the application for employment of criminal counsel. The bases for the McDonald court's decision were that as a matter of law such employment was not in the best interests of the estate and that any potential threat to the debtor's constitutional rights posed by the criminal prosecution was a matter consigned to the protection of the criminal courts where the prosecution lay.
On the first point, the McDonald court concluded the best interest of the estate would not be served because the potential threat to the bankruptcy estate was speculative and uncertain. Whether or not the criminal proceeding could have collateral estoppel effect on pending civil actions was unsettled and not at all apparent.
Additionally the operative fact (whether the oil and gas interests involved were securities) had already been determined adversely on appeal anyway, and funding a second full scale litigation of the same issue which might result in a favorable state court decision which might lead to a reconsideration of the appellate decision was obviously conjectural. As similarly suggested by Shawmut in its brief on this appeal, "this stacking of hypothetical upon hypothetical recalls the rationale described in Barnette v. Evans, 673 F.2d 1250, 1252 (11th Cir.1982):
[I]f we had some ham, we could have ham and eggs, if we had some eggs.
On the second point, the McDonald court noted that violation of the debtor's constitutional rights by the state criminal courts was not probable, but that in any event that would give him no greater right in the bankruptcy court. His remedy for any constitutional violation was to be sought in the state and federal courts of the criminal forum.

Conclusion
The foregoing discussion of the statutory and precedential matters bearing upon the issue whether bankruptcy estate moneys may be used to pay for criminal counsel for the debtor reveals certain underlying principles. These may be distilled as follows.
First, employment of special counsel must be in the "best" interest of the estate. In determining whether the best interests are at stake, there must be an actual need *975 for the services, based upon a threat to the estate or its property. The threat must be actual and real, not some hypothetical or speculative benefit which may or may not be realized. Criminal counsel must not be potentially in the estate's interest but reasonably and actually calculated to be in its best interest.
Second, special counsel must be for the estate and not for the personal benefit of the debtor. The need for counsel must be for purposes of protecting the assets of the estate or furthering its interests. The propriety of employing counsel must be gauged by the needs of the estate and directly related to the trustee's or debtor-in-possession's performance of the duties and responsibilities imposed by the Bankruptcy Code. While this Court cannot say there may never arise circumstances in which special criminal counsel may be necessary, the debtor's general counsel appointed under 11 U.S.C. § 327(a) must be presumed generally able to advise against criminal transgressions for post-bankruptcy activity, which is the only concern of the estate, while criminal investigations and prosecutions for pre-filing activity are matters which concern only the debtor personally and are excluded from the section 362 automatic stay designed to protect the estate.
Third, potential violations of the debtor's constitutional rights posed by criminal investigations or prosecutions occurring after the filing are of concern to the criminal forum, not the bankruptcy court. No violation of such rights by authorities charged with vindicating public interests through the criminal processes can give the debtor any greater interest in the private rights surrounding the estate being administered by a bankruptcy court.
Application of these precepts to the employment of Mr. Hogan herein inexorably leads to the conclusion that the order appealed from must be reversed. Only two troublesome aspects remain.
The debtor argued that the federal investigation may lead to prosecution of the debtor under the Racketeer Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. §§ 1961-1968, which may result in claims of forfeiture of the property of the debtor, which may apply to property of the estate. Shawmut replies that this is wholly speculative and that the customs law remission provisions of 18 U.S.C. § 1963(c) coupled with the fact that only the creditors who were victims would be penalized by such action make it unlikely that the government would seek a forfeiture of estate property.
The Court is not so sanguine as Shawmut that such possibilities may not materialize, but at this point such a use of RICO forfeiture penalties is indeed speculative, and there is no apparent threat of such an assault. In the present indictment the federal government has not charged a RICO offense. Although a superseding indictment theoretically could do so, at this point that spectre apparently is remote. If the government proceeds to trial upon the present indictment, once jeopardy attaches no RICO violation can thereafter be charged by virtue of the Constitution's prohibition of double jeopardy. Accordingly, that potential threat cannot justify the present employment of Mr. Hogan as in the "best" interest of the estate.
Similarly, the debtor has argued that there is a possibility that information divulged by the debtor to his counsel may later be waived or be the subject of efforts to divulge such information. See In re O.P.M. Leasing Services, Inc., 670 F.2d 383 (2d Cir.1982). Because the O.P.M. Leasing case involved a corporation rather than an individual, Shawmut argues such danger is not present here. Again, the Court is not so confident as Shawmut that no attempts to waive or to divulge information in violation of the debtor's rights to remain silent, rights to counsel, and attorney-client privilege will ever materialize. But again, at this point they are but hypothetical, and in any event they are more of concern to the debtor than to the estate. These problems, too, must be relegated to the appropriate forum if they arise, with the debtor's general *976 bankruptcy counsel in the meantime entrusted with its own responsibility and presumed ability to preserve privileged matters as required by the Canons of Ethics.
The bankruptcy court's July 19, 1983 Order Authorizing Debtor-in-Possession to Retain Special Criminal Counsel and its August 15, 1983 Order Denying Motion to Vacate Order Authorizing Debtor-in-Possession to Retain Special Criminal Counsel are hereby VACATED, and this case is REMANDED to the bankruptcy court with directions to enter an order denying the application to retain special criminal counsel, and further proceedings not inconsistent with this Opinion and Order on Appeal.
IT IS SO ORDERED.