In re Henry GHERMAN, First Financial Planning Corporation of South Florida, Inc., Financial & Investment Planning, Inc. a/k/a FIP, Inc., Debtors.

James S. FELTMAN, as Trustee for Henry Gherman and Financial and Investment Planning, Inc., a/k/a FIP, Inc., Plaintiff,

v.

Ramsey CLARK, Defendant.

Bankruptcy No. 88–03266–BKC–TCB.
Adv. No. 89–0069–BKC–TCB–A.

United States Bankruptcy Court,
S.D. Florida.

June 9, 1989.

John W. Kozyak, Miami, Fla., for plaintiff.

Ronald R. Peterson, Jenner & Block, Chicago, Ill., for Chapter 11 Trustee.

Kelley Drye & Warren including Smathers & Thompson, Joel M. Aresty, Miami, Fla., for defendant.

Schantz, Schatzman, Aaronson & Berlin, P.A., Miami, Fla., for Chapter 11 Creditors' Committee.

## ORDER ON DEFENDANT'S POST–TRIAL MOTION

THOMAS C. BRITTON, Chief Judge.

The "Defendant's Motion For Stay Pending Post–Trial Motions and Appeal, Motion to Amend Or Make Additional Findings of Fact, To Amend the Judgment, And For A New Trial" (CP 14) was heard May 26. The Motion is denied.

Almost all of the issues raised under this pleading have been fully and accurately answered, I believe, in the Response (CP 14a), filed by the plaintiff/trustee. I shall not repeat that analysis, but two other points, argued by defendant, merit comment.

■ 1. Defendant correctly notes that the $7,500 paid to him in October 1988 after the filing of the involuntary petition and after the entry of the Order for Relief came from cash found in Gherman's possession in Taiwan when he was taken into police custody in that country. I do not agree, however, with defendant's contention that those circumstances conclusively establish that the money was Gherman's.

The record before me reflects Gherman's admission that since 1969, in order to hinder, delay and defraud his creditors, he deliberately avoided accumulation of any money or property in his own name. Instead he treated certain bank accounts, owned by his wife or corporations, as though they were his.

In July and August of 1988, he fled Miami with $4.4 million in cash withdrawn from the accounts of others. Only a part of this "exit money" has since been traced and accounted for. He took that money with him in suitcases when he fled. I infer, therefore, that any money found in his possession when he was apprehended in Taiwan was a part of those embezzled funds. There is no evidence before me of any other source for that money. I find, therefore, that the $7,500 was an asset of these bankruptcy estates, subject to administration for the benefit of creditors.

Though I do not know how candid Gherman was in briefing his then prospective criminal attorney, details protected of course by the attorney-client privilege, I cannot believe Gherman could have unfolded *any* story plausible to an attorney of Mr. Clark's experience, which did not reveal at least the possibility that the money was not his to give, but belonged to others. I infer, therefore, that defendant knew or should have known that the $7,500 was stolen money and not Gherman's.

■ 2. The central thrust of defendant's present contention is, I believe, that § 329(b) relates solely to compensation which "exceeds the reasonable value of [an attorney's] services"[1] and that the Memorandum Decision of May 8 (CP 12 at 2) recites that defendant's "good faith and the reasonableness of [his] charges are both conceded". The apparently obvious inconsistency is the basis for defendant's argument that neither the statute nor its implementing rule are applicable here.

In fact, the trustee through counsel at trial merely stated he would not contest defendant's customary hourly charges and was not contending that defendant had a fraudulent intent.

Like the trustee's counsel, I have long respected Mr. Clark's distinguished record of public service and wanted this record to reflect that this case involves no charge or proof of *unethical* conduct. This court's earlier recital, quoted above, should now be corrected and amplified:

"Mr. Clark is an outstanding attorney of deservedly impeccable reputation. It is neither alleged nor argued that he had any fraudulent intent in accepting payment for his services. Plaintiff has offered no proof or argument that Mr. Clark's hourly charges for his services to Gherman as criminal counsel were exces-

---

1. The implementing Bankruptcy Rule 2017 similarly relates solely to "excessive" charges.

sive or unreasonable. Mr. Clark was retained in mid–June 1988 by Gherman to represent him if and when Gherman were indicted.

"I find and conclude, however, that *any payment by Gherman to any attorney for Gherman's defense from criminal charges made from funds embezzled by Gherman* is unreasonable and excessive, until and unless this court can find that such legal services are or were 'in the best interest of the estate' and until and unless this court can find that such services are or were 'for the estate and not for the personal benefit of the debtor'. *In re Duque*, 48 B.R. 965, 974–75 (S.D. Fla.1984).

"I can make neither finding on this record in this case. On the contrary, it has *not* been in the best interest of the estates in bankruptcy that Gherman has been defended from criminal charges; and such services were for the personal benefit of Gherman and not for the estates in bankruptcy."[2]

As the Legislative History recites:

"Payments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny." (H.R. 95–595, 95th Cong., 1st Sess. 329 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6285).

Accepting, as I must and do, that the potential bankruptcy estate may not be depleted for the debtor's criminal defense, the payment to this defendant of $25,000 on the eve of bankruptcy and $7,500 postpetition from that source was as *completely* excessive and unreasonable as would have been the payment of a fee to institute or defend a divorce action, no matter how reasonable the attorney's hourly charges and no matter how innocent or pure his intentions were when he took the money. Either would evade the creditor protection provisions of the Code and, for this reason, § 329(b) expressly permits the cancellation

of the entire retainer agreement as excessive. I believe that defendant has construed this remedial statutory provision too narrowly.

DONE and ORDERED.

---

**2.** Although I think the issue is irrelevant here, I also disagree with defendant's contention that his services to Gherman incidentally benefitted the bankruptcy estates.