In re Denton A. COOLEY, M.D., d/b/a
Cardiovascular Associates, d/b/a South-
west Apartment Homes, d/b/a Point of
Southwest, d/b/a Southwestern Plaza,
d/b/a Texas American Bank Bldg., and
d/b/a Cool Acres Ranch, Debtor.

FIRST CITY NATIONAL BANK OF `
HOUSTON, Plaintiff,

v.

Denton A. COOLEY, M.D., d/b/a Cardio-
vascular Associates, d/b/a Southwest
Apartment Homes, d/b/a Point of
Southwest, d/b/a Southwestern Plaza,
d/b/a Texas American Bank Bldg., and
d/b/a Cool Acres Ranch, Defendant.

Bankruptcy No. 88–00154–H5–11.
Adv. No. 88–0464.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Aug. 3, 1988.

Leonard H. Simon, Robert L. Pender-
graft, and Mary Jane Bundschuh, Pender-
graft, Elam & Simon, Houston, Tex., for
debtor.

Robin Gibbs, Russell Starbird, Gibbs &
Ratliff, Alan S. Gover, Robert Mrofka,
Beth Nanninga, Weil, Gotshal & Manges,
Houston, Tex., for First City Nat. Bank of
Houston.

ORDER DISMISSING
ADVERSARY CASE

MARGARET A. MAHONEY,
Bankruptcy Judge.

This matter comes before me on Debtor's
Motion to Dismiss the application of First
City National Bank of Houston (First City)
seeking a temporary restraining order, pre-
liminary injunction, permanent injunction
and declaratory judgment for failure to
state a claim upon which relief can be
granted. At a hearing held on June 13,
1988, I denied in part First City's Applica-
tion with respect to its request for a tempo-
rary restraining order. I am now denying
the remainder of First City's requested re-
lief.

Pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a) and the District Court's Order of Reference of Bankruptcy Cases and Proceedings, I have jurisdiction over this proceeding. Since its resolution turns on the interpretation of a prior court order, which in turn interpreted and applied a specific provision of Title 11, the proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O) and Fifth Circuit precedent. See *Wood v. Wood, (In re Wood)*, 825 F.2d 90 (5th Cir.1987). Since the dispute at the heart of this adversary proceeding involves solely legal questions rather than factual determinations, no further evidentiary hearing is necessary. I do incorporate for all purposes the findings of fact and conclusions of law of my prior order of May 27, 1988, which are highly relevant to the issue before me.

On January 4, 1988, the debtor, Dr. Denton A. Cooley, filed for relief under Chapter 11 of the Bankruptcy Code with the intention to liquidate his assets rather than reorganize them. On June 22, 1988, a liquidating plan was confirmed which, if fully complied with, will liquidate Dr. Cooley's estate over a period of five years with full satisfaction of all creditors' claims. Prior to confirmation of the plan, First City moved to limit the operation of debtor's business, Cardiovascular Associates (CVA), in a manner which would allow the creditors to benefit from the postpetition income generated from Dr. Cooley's medical practice. The issue which arose from First City's motion to limit required me to determine what portion of the postpetition income stream accrued to the benefit of the estate's creditors as Section 541(a)(6) "profits" and what portion accrued to the debtor as Section 541(a)(6) "earnings."

In my order of May 27, 1988, I held, among other things, that all postpetition income attributable to the services of. the five associate surgeons under contract to Dr. Cooley accrued to the estate as profits rather than to Dr. Cooley as service earnings. The issue I expressly left unresolved was the effect the expiration of the associate surgeons' contracts on June 30, 1988, as well as the liquidation of CVA would have on the estate's claim against any pro-spective profits generated by the associate surgeons if their affiliation with Dr. Cooley continued under a new professional entity.

First City recognizes Dr. Cooley's right to "wash his hands of CVA" and his entitlement under bankruptcy law to a fresh start, which would include his right to compete in the market under a new professional entity employing new surgeons. First City asserts that it "only seeks to prohibit Dr. Cooley from utilizing for his exclusive benefit an undeniably valuable economic asset of the medical practice as it existed on January 4, 1988," the date Dr. Cooley petitioned for relief under the Bankruptcy Code.

■ First City argues that the property right which it claims should continue to redound to the benefit of the estate in the event Dr. Cooley reaffiliates with the associate surgeons upon dissolution of CVA is the "long-standing advantageous business relationship" between the debtor and the associate surgeons. First City asserts that if the associate surgeons and Dr. Cooley agree to continue their relationship, Dr. Cooley must turn over to the estate any profits derived from the associate surgeons' services.

I cannot agree with First City's argument. First, in my order of May 27, 1988, the property right which I focused on as generating profits accruable to the estate under Section 541(a)(6) was the "services of the associate surgeons" rather than a "long-standing advantageous business relationship." The nexus between those services performed by the associate surgeons and the estate's interest in any profits so generated was their affiliation with Cardiovascular Associates. Such services generated profits which logically accrued to either the estate on the one hand or Dr. Cooley on the other. Although I held untenable Dr. Cooley's assertion that simply because he as debtor-in-possession had not assumed the associate surgeons' contracts that all income from their services must therefore accrue to Dr. Cooley as part of his service earnings, it does not follow that the estate's interest in the associate sur-

geons' services continues in the face of the expiration of their contracts and the liquidation of CVA.

To remain property of the estate, the associate surgeons' affiliation with the estate must be maintained. Had their contracts expired and had Cardiovascular Associates been liquidated on the date Dr. Cooley filed his bankruptcy petition, there would be no questions that the estate's interest in such services would have been extinguished, irrespective of any subsequent association with Dr. Cooley. In this case, however, as in most Chapter 11 business liquidations, the business continued to operate, generating profits from assets, tangible and intangible, still employed for the benefit of the estate and its creditors.

The necessity of the nexus between the services of the associate surgeons and their continued affiliation with that portion of Dr. Cooley's estate represented by Cardiovascular Associates is supported by the language I employed in my prior order. Although I acknowledged that the "[associate surgeons'] services were an asset or an interest in property which as of the commencement of the case became property of the estate", I further stated that the "profits derived from their services, *so long as they are affiliated with the estate,* accrue to the benefit of the estate and its creditors." See May 27, 1988 Order, at 29. (Emphasis added.) Other language in my May 27th Order makes clear that at least with respect to any profits generated by the associate surgeons, such profits accrue to the estate only so long as an affiliation exists between CVA and the associate surgeons. *Id.* at 30.

First City has relied on state law for the proposition that the nature of the property interest at issue in its Motion to Limit Debtor's Business as well as in this adversary proceeding is the advantageous business relationship which accrued to the estate as of the commencement of the case. As I have noted, this characterization misconstrues the nature of the property interest as I determined it to be and alters the nature of the property interest from one dependent upon the existence of CVA to one distinct and severable from any association with CVA.

Even if a fair reading of my prior order could lead to the conclusion that the property interest at issue could be construed as an advantageous business relationship, it is questionable that under state law the estate holds such an interest. First City has cited four cases in support of its characterization of an advantageous business relationship as the property interest over which the estate continues to exercise dominion. *Bray v. Squires,* 702 S.W.2d 266, 272 (Tex. App. [1st Dist.] 1985, no writ); *State National Bank v. Farah Mfg. Co.,* 678 S.W.2d 661 (Tex.Civ.App.—El Paso 1984, writ dism'd.); *Vietnamese Fisherman's Association v. Knights of KKK,* 518 F.Supp. 993, 1011 (S.D.Tex.1981); *Leonard Duckworth, Inc. v. Michael L. Field & Co.,* 516 F.2d 952, 956 (5th Cir.1979). Under Texas law, an aggrieved party whose "reasonable expectancy of a prospective contract" is maliciously and unjustifiably interfered with by a third party certainly has a cause of action for damages in tort. *Vietnamese Fisherman's Association,* 518 F.Supp. at 1011. Similar recognition exists with respect to the wrongful interference by one party with an advantageous business relationship of another. *Cooper v. Steen,* 318 S.W.2d 750, 757 (Tex.Civ.App.1958). The underlying property right in both situations, if such right exists separate and distinct from the aggrieved party's proprietary interest in any cause of action for damages, is wholly dependent upon the reasonable expectancy of a continuing business relationship or prospective contract.

Although as of the petition date all interests in property the debtor holds accrue to the estate, it is an untenable proposition that Dr. Cooley's expectancy of a prospective contract or continuing business relationship with the associate surgeons, *beyond that of the estate's legitimate interest in any profits they generated prior to CVA's liquidation,* passed to the estate. Any expectation beyond the estate's interest in preliquidation profits generated by the associate surgeons was wholly dependent upon the personal nature of the relationship between Dr. Cooley and the associ-

ate surgeons. The relationship would be of no value to the estate whatsoever without the participation of Dr. Cooley. As noted previously, the associate surgeons' contracts by their own terms were to, and consequently did, expire on June 30, 1988, which was also the date set in the confirmed plan for the liquidation of CVA. Any expectation that Dr. Cooley had as of the petition date with respect to any prospective business relationship with the associate surgeons as a practical matter was that with the expiration of their contracts and the liquidation of CVA, they would join him in a new medical entity. The extent, then, of any reasonable expectancy that may have arguably accrued to the estate extended only to those profits generated by the services of the associate surgeons from the date Dr. Cooley filed his petition to the date CVA was liquidated.

■ Under state law, whether the estate holds a property interest denoted as an advantageous business relationship is highly questionable. The nature of the interest would appear to be too remote and personal in nature to be characterized as a property interest turned over by the debtor at the time he filed his petition. I need not decide that issue, however, for I hold that even if under state law such a property interest exists, the *extent* to which it became property of the estate is a matter of bankruptcy law and I am limiting it to the time in which the associate surgeons are affiliated with CVA.

To allow the estate to maintain a continuing proprietary interest in the relationship between Dr. Cooley and the associate surgeon would severely undermine the debtor's right to a fresh start. On the date that Dr. Cooley filed his petition, the policy of granting and protecting his right to a fresh start left Dr. Cooley with the right to accumulate new wealth in the future. *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). Although it is true that Dr. Cooley could not employ estate assets in acquiring new wealth, I view any proprietary interests the estate holds in the relationship between the associate surgeons and Dr. Cooley as dependent upon their affiliation with the entity which accrued to the estate, Cardiovascular Associates. The estate's interest in profits generated by the services of the associate surgeons when balanced against the debtor's right to a discharge and fresh start, the associate surgeons as well as Dr. Cooley's right to contract and associate without continuing interference from creditors, and the remote and speculative nature of the property interest asserted by First City leaves me with the firm conviction that as a matter of bankruptcy law such interest does not extend beyond the liquidation of CVA.

The strongest argument against recognition of a continuing interest of the creditors in any post-liquidation association between the associate surgeons and Dr. Cooley is where such recognition could conceivably lead. If I were to find such an interest in property accrues to this estate by virtue of an advantageous business relationship held by the debtor at the commencement of the case, nothing would prevent a broad sweep of all such relationships within the reach of creditors of an estate. In the name of "liquidating" such property of the estate, creditors could wield broad power in Chapter 7 and Chapter 11 liquidations beyond discharge of a debtor and liquidation of the estate. Any debtor desiring to continue postpetition a line of work engaged in prepetition would be subject to an impossible dilemma, given the choice between establishing totally new business relationships of every imaginable type or turning over all economic benefits from such prepetition relationships. The reach of the term "property of the estate" under Section 541 simply cannot extend to the degree that First City contends without damage to the underlying policies and goals of the Bankruptcy Code.

For all the above reasons, I hold that as a matter of law, debtor's motion to dismiss the application of First City seeking injunctive relief and declaratory judgment is GRANTED for failure to state a claim upon which relief can be granted. This case is hereby dismissed.