In re Neonilo A. TEJANO, Debtor.

Bankruptcy No. 90–40350–11.

United States Bankruptcy Court,
D. Kansas.

May 10, 1991.

Edward J. Nazar, Redmond, Redmond & Nazar, Wichita, Kan., for debtor.

Jack N. Bohm, Buck, Bohm & Stein, Shawnee Mission, Kan., for unsecured creditors.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

This case is before the Court on a motion to dismiss filed by the unsecured creditors' committee. The committee claims that the debtor's filing lacks good faith, as evidenced by the contents of the debtor's disclosure statement and plan.

The debtor is represented by Edward J. Nazar of Redmond, Redmond & Nazar of Wichita, Kansas. The unsecured creditors' committee is represented by Jack N. Bohm of Buck, Bohm & Stein, P.C., of Leawood, Kansas.

## FINDINGS OF FACT

The debtor is a physician who had an annual income at the time of filing his chapter 11 petition of $680,000.00. He lives in a substantial home with a pool and tennis court on five acres in the country. There are six vehicles used and owned by his immediate family, including a Mercedes and a Porsche; however, only one vehicle is titled in his name, a 1984 Jeep Eagle. He is a joint owner with his wife of a 1984 Ford Van. The combined value of the Jeep and the Van is $7,000.00. He owns life insurance policies with a cash surrender value of $80,000.00. The debtor made the downpayment and makes all other payments on a condominium in Steamboat Springs, Colorado, which was titled and remains in his wife's name. The debtor has transferred several hundred thousand dollars to a company owned by his wife called Espair Air, Inc., which owns two airplanes. The debtor supplies funds to his wife who then pays the expenses of Espair Air, Inc. He has in excess of $550,000.00 in a pension and retirement fund through his employer and an additional $18,000.00 in an IRA. His wife has no income but that which he supplies her. He purportedly gave his wife a lien on his Rolex watch in return for a loan of $2,500.00 to pay the filing fee in this case and a retainer to his counsel.

At the time of this filing, Dr. Tejano was current on his secured debt and was cur-

rent on most of his unsecured debt except for over $500,000.00 incurred in two failed real estate ventures in which he was a general partner. He has maintained payments on his prepetition secured and unsecured debt except for the failed real estate venture debt and credit card debt where the issuer refused to allow him to continue to use the credit card in exchange for his continued contract payments on all charges.

For a long period of time, the debtor has planned his estate to withstand levies by potential creditors who might arise out of a physician-patient relationship. Being an employee with a substantial monthly salary, he is vulnerable to garnishment and in fact, according to his disclosure statement, a garnishment provided the impetus for this filing. Excluding exempt assets and those transferred to his wife, the value of the debtor's nonexempt assets available for distribution to creditors is less than $40,000.00.

In his disclosure statement and plan, the debtor proposed to pay his wife's secured creditors in accordance with their prepetition agreements. He intended to pay in full unsecured creditors who have agreed to continue an ongoing debtor-creditor relationship with him in accordance with their prepetition agreements. He proposed a fifteen-year amortized payment with a three-year balloon to pay his homestead debt in full although he owes $391,000 on the property and values it at only $240,000. He proposed to pay all other creditors the liquidation value of his nonexempt property or $40,000.00, whichever was greater, less administrative expenses including attorney fees.[1] Any shortfall between the value of his nonexempt assets and $40,000.00 would be made up by contribution of his postpetition earnings. The plan further provides that creditors will not proceed against co-

makers (Mrs. Tejano) so long as the debtor is not in default.

The debtor intends the following monthly use of his estimated $50,000 in monthly take-home pay: $4,600.00 home mortgages, $880.00 utilities, $1,000.00 food, $1,500.00 clothing, $2,337.00 transportation, $2,500.00 automobile payments, $3,000.00 life insurance, $2,000.00 IRA and pension, $2,000.00 expenses related to the condo, $9,000.00 payments to or for three children living in the home, $2,000.00 unreimbursed travel and meeting expenses, $9,000.00 ongoing unsecured debt payments and approximately $5,000.00 of other itemized expenses. Assuming the legitimacy of these expenses, the debtor would still have approximately $5,000.00 per month in discretionary income.

The debtor's schedules show $391,000.00 in secured debt on the homestead, $5,000 on a piano and no priority debt. They also show $575,700 in unsecured debt; however, at least $125,000.00 of that figure represents debt actually secured by an asset held by Mrs. Tejano, the Colorado condominium. In addition, he has listed as contingent and disputed whatever obligations he may have in two partnerships in which he served as a general partner. These disputed debts may amount to approximately $500,000.00.

## CONCLUSIONS OF LAW

At the time that this case was filed, it was impossible to discern this debtor's intentions. Of course he had no business to reorganize since he works as an employee and his real estate ventures were beyond reorganization.[2] Upon filing of the debtor's plan and disclosure statement, the debtor's intent was made clear. He intends to retain his substantial income, his standard of living, and the assets he enjoys, some of which he has placed in his wife's name. He has no intent to reorga-

---

1. Though his plan called for payment of counsel and other professional fees from the $40,000.00, the Court has previously denied that request.

2. There is currently a debate among judges as to whether a nonbusiness individual debtor should be allowed to file a petition under chapter 11 of the Bankruptcy Code. This debate is slated for resolution by the United States Supreme Court in the case of *In re Toibb*, 902 F.2d 14 (8th Cir.1990) cert. granted sub nom. *Toibb v. Radloff*, —— U.S. ——, 111 S.Ct. 775, 112 L.Ed.2d 838 (1991).

nize as that term is generally understood. He has no business assets, and thus no reason to extend this case for months while such assets are sold by an ongoing business to obtain a better price for creditors or some other similar motive beneficial to creditors while assisting the debtor. He intends essentially to reaffirm with his secured creditors and some unsecured creditors by paying them in full "outside the plan" while paying others little or nothing either under or outside the plan. In fact, his initial proposal, rejected by the court, was to pay $40,000.00 from the sale of nonexempt assets and postpetition earnings almost totally to counsel and other professionals assisting him in this case, with very little remaining for his general creditors.

The debtor's proposed treatment of creditors is strained. He lists creditors who are unsecured in his estate as secured because they are secured to assets in his wife's name. Some of these "secured creditors" and some unsecured creditors are listed as unimpaired when in fact they are to be paid nothing through the plan but are to be paid "outside the plan" from the debtor's postpetition earnings. The listing of these creditors to be paid outside the plan was apparently to avoid any taint of improper classification, treatment, or discrimination in violation of 11 U.S.C. §§ 1122(a), 1123(a)(4) and 1129(b)(1).

Chapter 11 is generally to be used to reorganize, although in some instances liquidation is permissible. To reorganize, the debtor submits a plan to use the income generated by the business or the debtor to retire debt and to gain confirmation. To liquidate, the debtor submits a plan of liquidation, the plan is implemented (if approved), and the creditors are paid the proceeds of the liquidation.

**This debtor** has submitted a hybrid plan. He intends to liquidate his few nonexempt assets, pay the proceeds to select creditors, and thereby discharge over a half a million dollars in unsecured debt for pennies on the dollar. He intends to reorganize by promising payment to "unimpaired" unsecured, impaired secured, undersecured and purportedly secured creditors "outside the plan" through use of his income from personal services. This Court concludes that a nonbusiness filing with such a plan in mind is made in bad faith. If an individual without a business is to file a chapter 11 case, then reorganization must ordinarily be the goal and the debtor must devote his income to that goal. If such an individual wishes to liquidate and for some reason chapter 7 is unavailable or unsatisfactory, for example, because the debtor can obtain more money than anyone else from the liquidation of assets, then such liquidation may be carried out without devoting his income to the plan.[3] However, in a chapter 11 liquidation, a nonbusiness debtor must still treat similarly situated creditors similarly and not unfairly discriminate. The debtor's attempt here to avoid those restrictions by favoring some creditors through payments provided for in the plan but to be made "outside" the plan cannot be permitted.[4] A nonbusiness, liquidating chapter 11 debtor may not provide in his plan to prefer creditors who differ from creditors whose claims are to be discharged only because they agree to continue to fund his luxurious lifestyle as though he had never filed for bankruptcy over those who refuse or are not necessary for his lifestyle. Instead, he must discharge all of those debts if some are to be discharged, and the creditors he wishes to favor must rely on his voluntary post-confirmation payments, not on any possibly binding provision in his plan.

**3.** For an example of a possibly acceptable liquidating plan, see *In re Cooley,* 87 B.R. 432, 435 (Bankr.S.D.Tex.1988) and 88 B.R. 788, 789 (Bankr.S.D.Tex.1988), where, although the cases decided questions about property of the estate, the court noted a famous heart surgeon proposed to liquidate his numerous real estate, oil and gas and other investment interests over the

5-year life of a chapter 11 plan that would pay his creditors in full.

**4.** Cf. *In re Dubberke,* 119 B.R. 677, 681 (Bankr.S.D.Iowa 1990), where the court indicated that a debtor's desire to repay only certain creditors is a factor to be considered in determining whether a chapter 7 filing constitutes substantial abuse under § 707(b).

In sum, this debtor did not file a chapter 11 case to reorganize a business, to restructure debt, or to liquidate assets in a controlled manner. He filed simply to get rid of a few debts he did not want to pay or found inconvenient.

For these reasons, the Court concludes the debtor filed this chapter 11 case in bad faith and it should therefore be dismissed.

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.