**In re Holly FLOR, Rudolph V. Mangels, Debtors.**

**Bankruptcy No. 2–91–01457.**

United States Bankruptcy Court, D. Connecticut.

May 3, 1994.

Ira B. Charmoy, Charmoy & Nugent, Bridgeport, CT, for debtors.

Julie A. Manning and Douglas M. Evans, Schatz & Schatz, Ribicoff & Kotkin, Stamford, CT, for BOT Financial Corp., creditor.

Doria G. Stetch, Office of U.S. Trustee, New Haven, CT.

*MEMORANDUM OF DECISION AND
ORDER RE: CONFIRMATION
OF PLAN*

ROBERT L. KRECHEVSKY, Chief
Judge.

## I.

### ISSUE

The dispositive issue in this proceeding is whether a court may confirm a debtors' joint Chapter 11 plan whose feasibility concededly relies upon the receipt of the debtors' future wages for a period of at least seven years. The debtors, who are husband and wife, contend that "present law is totally permissive of such a confirmation." Debtors' Brief at 1. The court, notwithstanding apparent plan acceptance by all impaired classes, concludes fundamental bankruptcy principles embodied in Chapter 11 do not tolerate plan confirmation.

## II.

### BACKGROUND

The debtors, Holly Flor (Flor) and Rudolph V. Mangels (Mangels), filed a joint Chapter 11 petition on May 3, 1991. On April 22, 1994, the court held a hearing on confirmation of the debtors' Seventh Amended Plan (the plan).[1] The plan, in general, deals with various parcels of the debtors' commercial property located in New Milford, Torrington, Bethel and Roxbury, Connecticut, on which a garage and car washes are located, as well as the debtors' Roxbury residence and their Colorado condominium. All realty, except for the condominium, is over-encumbered with numerous mortgages and liens. The plan creates 13 classes of creditors and interest holders, eight of which are stated to be impaired. Seven of the impaired classes include secured creditors, and Class 12 represents an impaired class of unsecured creditors holding claims totaling $1,887,131. The total allowed secured claims approximate $2,052,685. Class 13, the equity interests of the debtors in their property, is unimpaired.

The liquidation analysis contained in the debtors' Fifth Amended Disclosure Statement shows that if the debtors' estate were presently liquidated, the sum of about $45,-280 would be available for payment of unsecured claims.

The plan provides that the debtors make payments to certain of the secured creditors at varying newly created interest rates for periods up to twenty years; that the debtors surrender several parcels of realty to the lienholders; and that the debtors pay $52,000 to unsecured creditors payable in regular monthly installments for a period of seven years. Such payments approximate a return of 2.8% of allowed claims. A further provision states that unsecured creditors receive 65 percent of the net proceeds, if any, of a lawsuit which the debtors are pursuing in state court against the New Milford Police Department and others.

The plan states that confirmation will discharge the debtors from all debts except as provided in the plan, and that Flor will act as plan administrator to make monthly payments "from the personal income of her husband...." Plan, art. VI, at 11. Mangels testified that he has been regularly employed for the past 29 years as an airline pilot, that his present annual salary is $160,000, and that he has agreed to contribute $619 monthly from his wages for 84 months as called for by the plan.

## III.

### DISCUSSION

#### A.

The debtors, six weeks prior to the confirmation hearing, submitted a memorandum entitled "Brief In Support Of Confirmation Of Consumer Chapter 11," in which they noted that "[t]he basis of the plan ... is primarily funded from wages." Debtors' Brief at 1. The debtors contend that the Supreme Court, in *Toibb v. Radloff,* 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991), "impliedly recognized that wages could well

---

1. Section 1128(a) provides:
   After notice, the court shall hold a hearing on confirmation of a plan.

11 U.S.C. § 1128(a).

be the funding of a consumer Chapter 11 plan"; that debtors are bound by a confirmed plan and subject to "sanctions," in that the case may be dismissed or converted if a debtor "fails to contribute to the plan"; and that the debtors are "submitting almost all of their disposable income into the plan . . . and should be allowed the opportunity to do so." Debtors' Brief at 2–5. The debtors conceded in their brief that when "the Debtors receive an immediate discharge, their discharged debts are replaced in kind by their new contractual obligations pursuant to Code section 1141(a)."[2] *Id.* at 6. In a supplemental brief filed by the debtors ten days prior to the hearing, they asserted that "this Court could make an order providing for a wage execution similar to that of [§ 1325(c)][3] since the confirmation is a binding judgment on the debtors' inclusion of a portion of their wage income . . . [even if such plan] 'provision[ ] [is] later determined to be inconsistent with bankruptcy law.' " Debtors' Supplemental Brief at 2 (quoting *Johnson v. Laing (In re Laing)*, 146 B.R. 482, 485 (Bankr.N.D.Okla.1992)).

### B.

■ It is firmly established that estate property in Chapter 11 does not include an individual debtor's postpetition wages. Section 541(a)(6) specifically provides that excluded from property of the estate "are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6). *See also In re FitzSimmons*, 725 F.2d 1208, 1211 (9th Cir. 1984) ("If Congress had intended to make the earnings exception inapplicable to Chapter 11 cases, we believe that it would have done so explicitly, as it did in § 1306."). The Supreme Court clearly enunciated the public policy underlying the provisions of

2. Section 1141(a) provides, in pertinent part:

[T]he provisions of a confirmed plan bind the debtor . . . and any creditor . . . whether or not the claim . . . of such creditor . . . is impaired under the plan and whether or not such creditor . . . has accepted the plan.
11 U.S.C. § 1141(a).

3. Section 1325(c) provides:

After confirmation of a plan, the court may order any entity from whom the debtor re-

§ 541(a)(6) sixty years ago in *Local Loan Co. v. Hunt*, 292 U.S. 234, 243–46, 54 S.Ct. 695, 698–99, 78 L.Ed. 1230 (1934):

The earning power of an individual is the power to create property; but it is not translated into property within the meaning of the bankruptcy act until it has brought earnings into existence. . . .

. . . .

When a person assigns future wages, he, in effect, pledges his future earning power. The power of the individual to earn a living for himself and those dependent upon him is in the nature of a personal liberty quite as much if not more than it is a property right. To preserve its free exercise is of the utmost importance, not only because it is a fundamental private necessity, but because it is a matter of great public concern. . . . The new opportunity in life and the clear field for future effort, which it is the purpose of the bankruptcy act to afford the emancipated debtor, would be of little value to the wage earner if he were obliged to face the necessity of devoting the whole or a considerable portion of his earnings for an indefinite time in the future to the payment of indebtedness incurred prior to his bankruptcy.

The debtors' attempt to parallel their Chapter 11 case to one under Chapter 13 is not compelling. Congress specifically tailored Chapter 13 to provide flexible relief to wage-earner debtors who voluntarily sought a means of repaying their debts without incurring the stigma and other consequences of straight-liquidation bankruptcy. *See In re Lennon*, 65 B.R. 130, 131–32 (Bankr.N.D.Ga. 1986). Chapter 13 allows a debtor to fund a plan out of the debtor's earnings, *see* § 1306(a)(2),[4] but only after paying careful

ceives income to pay all or any part of such income to the trustee.
11 U.S.C. § 1325(c).

4. Section 1306(a)(2) provides:

Property of the estate includes, in addition to the property specified in section 541 of this title—
(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or con-

attention·to the doctrine of *Local Loan* and the prohibition of involuntary servitude contained in the Thirteenth Amendment. *See In re Cooley,* 87 B.R. 432, 440 (Bankr. S.D.Tex.1988).

Chapter 13 places rigid limits on the duration of a voluntary plan (three years or, for cause, five years maximum, *see* § 1322(c)) and the maximum amount of debt to be dealt with ($100,000 of unsecured and $350,000 of secured debt, *see* § 109(e)).[5] Chapter 13 permits the debtor unilaterally to dismiss or convert his case at any time. § 1307(a), (b). It also contains significant protections for creditors. Section 1302 mandates the appointment of a trustee to oversee the consummation of the debtor's plan and to ensure that the debtor makes timely payments within thirty days after the plan is filed; and § 1328 prevents, in general, the debtor from receiving a discharge from debt until "completion by the debtor of all payments under the plan."

■ The debtors' Chapter 11 plan, on the other hand, discharges 97.2% of the unsecured debt upon confirmation; the plan mandates at least seven years of wage contribution from the debtors; and the plan deals with secured debt exceeding $2,052;000 and unsecured debt amounting to $1,887,131. To contend, as the debtors clearly do, that any debtor may evade the carefully-structured restrictions contained in Chapter 13 simply by filing for relief under Chapter 11, is to promote an unacceptable distortion of bankruptcy policy.

■ The debtors' suggestion in their supplemental brief that the court enter a wage execution *similar to* a § 1325(c) order for the purpose of "binding" the debtor also misses the mark. Connecticut prohibits the voluntary assignment of wages by an employee. *See* Conn.Gen.Stat. § 52–361a(i) ("Any assignment by an employee of his earnings shall be void except (1) payments due for support in public welfare cases, payments pursuant to a family support judgment ...

and (2) deductions for union dues....."). Chapter 11 does not authorize an order contrary to this state-law prohibition. *Cf. Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 204, 108 S.Ct. 963, 967, 99 L.Ed.2d 169 (1988) ("Viewed from the time of approval of the plan, respondents' promise of future services is intangible, inalienable, and, in all likelihood, unenforceable."). It is thus possible that with an unenforceable and illusory "wage order" in the suggested confirmation order, unsecured creditors would receive less under the confirmed plan than they will under a present liquidation of the debtors' assets.

The debtors' reliance on *Toibb v. Radloff* for the authorization of a wage order in Chapter 11 is misplaced. *Toibb* dealt with who may be a debtor under Chapter 11, and did not speak to the issue of the use of postpetition earnings of an individual debtor. *Toibb,* in dicta, discussed the matter presented in this proceeding. The Court noted that Congress omitted a provision "in Chapter 11 requiring a debtor to pay future wages to a creditor [in light of] Congress' concern about imposing involuntary servitude" on a debtor. 501 U.S. at 166, 111 S.Ct. at 2202.

The debtors are not correct in their argument that if their plan is confirmed, and they anytime thereafter fail to make the plan payments, creditors are protected by their right to have the case dismissed or converted. As the debtors acknowledge, the discharge of debts occurs upon confirmation. Section 1144 sets a bar date of 180 days from confirmation to seek to revoke a discharge, and fraud is the only permitted ground.

### C.

The debtors, in their original brief, cited three bankruptcy court decisions in which a bankruptcy court appears to be untroubled by the fact that an individual debtor proposed to fund a plan from his future earnings. *In re Harmon,* 141 B.R. 878 (Bankr. E.D.Pa.1992); *In re Kemp,* 134 B.R. 413

---

verted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.
11 U.S.C. § 1306(a)(2).

**5.** Chapter 12, which permits farmers to utilize future earnings in a plan, is similarly restricted

to voluntary petitions, maximum plan durations of five years, and maximum total debt of $1,500,-000.

(Bankr.E.D.Cal.1989); *In re Fernandez,* 97 B.R. 262 (Bankr.E.D.N.C.1989). None of these cases discuss the issues raised in the proceeding. To the extent that these bankruptcy courts intended to bind the individual debtor to make payments from future earnings, and found the plan feasible based upon the assured receipt of such earnings, I respectfully disagree with their rulings.

### IV.

### CONCLUSION

■ The court denies confirmation of the debtors' plan. The plan could not be confirmed under Chapter 13, even if the debtors qualified as individuals entitled to seek relief under Chapter 13. The plan proposes a discharge upon confirmation and payments from future wages for a period exceeding five years, both of which conditions would be barred by Chapter 13. More fundamentally, the court concludes it is against public policy to enter a Chapter 11 plan confirmation order which purports to authorize and validate a voluntary assignment of an individual's future wages. The court, accordingly, denies confirmation because the plan does not comply with the applicable provisions of title 11, § 1129(a)(1); the plan proposes means forbidden by law, § 1129(a)(3); the plan is not in the best interest of creditors, § 1129(a)(7);[6] and the plan is not feasible, § 1129(a)(11).[7] It is

SO ORDERED.

---

6. In Class 12 for unsecured claims, one creditor holding a claim of $166,366.29 voted "No."

7. Section 1129(a)(1), (3), (7) and (11) provide:
The court shall confirm a plan only if all of the following requirements are met:
(1) The plan complies with the applicable provisions of this title.
....
(3) The plan has been proposed in good faith and not by any means forbidden by law.
....
(7) With respect to each impaired class of claims or interests—
(A) each holder of a claim or interest of such class—
(i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date....
....
(11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.
11 U.S.C. § 1129(a).