**David John ROLAND, Marie Elana Roland, Appellants,**

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA, Ronald Dukes, and First Union Mortgage Corporation, Appellees.**

No. CIV.A. 2:97cv788.
Bankruptcy No. 96–27648–A.

United States District Court,
E.D. Virginia,
Norfolk Division.

Aug. 12, 1998.

---

James Thomas Lloyd, Jr., Norfolk, VA, for Appellants.

Carl Arthur Eason, Wolcott, Rivers, Wheary, Basnight & Kelly, P.C., Virginia Beach, VA, for UNUM Life Insurance Company of America.

C. Kent Allison, Allison & Edge, P.C., Virginia Beach, VA, for Ronald Dukes.

Julian Albert Bryant, Jr., Dinsmore, Evans & Bryant, Virginia Beach, VA, for First Union Mortgage Corporation.

Debera F. Conlon, Office of United States Trustee, Norfolk, VA, United States Trustee.

## MEMORANDUM OPINION AND ORDER

JACKSON, District Judge.

Pursuant to 28 U.S.C. § 158(a), this matter comes before the Court on appeal from the Bankruptcy Court, Judge David H. Adams presiding. By order filed July 8, 1997, the bankruptcy court denied Appellants David John and Marie Elana Roland's application for employment of criminal counsel. Two questions have been presented on appeal. The first, and threshold question, is whether the bankruptcy court can deny the use of non-estate assets for the retention of criminal counsel. The second question presented is, assuming the bankruptcy court can prevent the use of non-estate assets for retention of special counsel, whether such retention is nevertheless in the best interests of the creditors in this case. The Court finds the first question dispositive; therefore, it need not, and does not, reach the second question.

### I. Factual Background

Appellants are or were the owners of several pieces of real property throughout the Hampton Roads area. Mrs. Roland is, or was, a silent partner in an entity known as MSRV. MSRV was engaged in real estate transactions with various individuals, including the Appellants, involving loans guaranteed by the Department of Housing and Urban Development ("HUD").

On December 2, 1996, the Appellants sought relief from the bankruptcy court, filing under Chapter 11 of the Bankruptcy Code. At some point after the filing of their

bankruptcy petition, Appellants became aware that the Federal Bureau of Investigation ("FBI") had opened an investigation into the use of HUD guaranteed loans in several states, and by several entities, including MSRV. Appellants became concerned that Mrs. Roland was, or could become, a subject of the investigation, based on her association with MSRV.[1]

Appellants decided to seek criminal defense representation for Mrs. Roland. They contacted the firm of Zoby & Broccoletti, P.C., who requested a $25,000.00 retainer as a flat fee for representation during the FBI/HUD investigation. Appellants desired to pay this fee out of advances against Mrs. Roland's post-petition earnings as a financial broker. No funds of the estate, or rents from property in the estate were to be used to pay the criminal defense counsel. Appellants submitted a petition to the bankruptcy court pursuant to 11 U.S.C. § 327(a) to employ James O. Broccoletti, Esq. (of Zoby & Broccoletti, P.C.) as defense counsel. Certain creditors objected to the petition. After a hearing on the matter, the bankruptcy court denied the Appellants' application.

## II. The Decision of the Bankruptcy Court

The bankruptcy court found that the post-petition wages Appellants sought to use were not part of the estate. The court noted, however, that Mrs. Roland's post-petition earnings were the sole source of funding for the joint plan of reorganization.[2] The bankruptcy court proceeded to consider Appellant's application under § 327(a). Relying principally upon *In re Duque*, 48 B.R. 965, 969 (S.D.Fla.1984) and its' progeny, which analyzed the use of estate funds for the employment of criminal counsel, the bankruptcy court found that there was no tangible benefit to the estate in the retention of criminal counsel. Any benefit to the estate was purely theoretical, occurring only if Mrs. Roland was convicted, which might lead to her inability to continue funding the reorganization plan. As Mrs. Roland had not even been indicted, the bankruptcy court concluded "[s]ome tangible benefit to the estate must exist in order for the Court to approve

the expenditure of possible estate funding for criminal representation of one of the Chapter 11 debtors. At this point, we are asked to speculate about the need for Mrs. Roland's criminal representation and any benefit to be derived by the estate therefrom." Memorandum Opinion and Order, filed July 8, 1997 at 8. The bankruptcy court therefore denied approval of the application of employment under 11 U.S.C. § 327(a).

## III. Standard of Review

■ A district court's review of a bankruptcy court's decisions of law are *de novo*. *L & R Associates v. Curtis*, 194 B.R. 407, 409 (E.D.Va.1996) (*citing In re Johnson*, 960 F.2d 396, 399 (4th Cir.1992)). A district court reviews a bankruptcy court's findings of fact under a clearly erroneous standard. Fed. R. Bankr.P. § 8013.

## IV. Discussion

To what extent can a bankruptcy court exert control over a debtor's use of post-petition wages to hire criminal counsel? As cited in the bankruptcy court's opinion, a number of courts have addressed limitations on the use of estate assets for criminal defense, but apparently the issue presented in this case has not been squarely addressed previously.

In order to analyze this question, the Court must first examine the status of the funds in question. Certainly, if these post-petition earnings were found to be part of the estate, there is little question that the bankruptcy court retains authority over all issues relating to the expenditure of estate property. Given that the Court finds, as the bankruptcy court found, that post-petition wages are not property of the estate, the Court must then address what jurisdiction the bankruptcy court possesses over non-estate funds. The Court will then address what effect Appellants' status as trustees, and their application under 11 U.S.C. § 327(a) has upon this inquiry. Finally, the Court will analyze what options are available to creditors who object to the Appellants' proposed use of their non-estate funds.

1. The Court has no information that Mrs. Roland has ever been indicted for any crimes arising out of her association with MSRV.

2. The Court notes that no plan of reorganization had been filed at the time of the bankruptcy court's order. Memorandum Opinion and Order, filed July 8, 1997 at 2.

## A. Are the Funds Property of the Estate?

■ Appellants sought to use advances against Mrs. Roland's post-petition wages to pay for her criminal counsel.[3] The status of such post-petition earnings is governed by 11 U.S.C. § 541, which states:

### § 541. Property of the estate

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property,

wherever located and by whomever held:

. . .

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, *except such as are earnings from services performed by an*

*individual debtor after the commencement of the case . . .*

11 U.S.C. § 541(a)(6) (emphasis added). The interpretation of this section appears to be quite clear.[4] The Fourth Circuit has stated "§ 541(a)(6) [ ] allows the debtor to exclude from his estate any compensation or salary he might earn after the date of the petition." *In re Andrews,* 80 F.3d 906, 910 (4th Cir. 1996); *see also In re El–Amin,* 126 B.R. 855, 860 (Bankr.E.D.Va.1991) (Chapter 11); *In re Pecht,* 57 B.R. 137, 140 (Bankr.E.D.Va.1986) (Chapter.11). In accord with the great majority of courts to consider this question,[5] the Court finds that the post-petition wages[6] of an individual in chapter 11 are not property of the estate. Accordingly, the funds sought to be used by Appellants, as they are advances against non-estate funds, are also not property of the estate.

## B. Can the Bankruptcy Court Exercise Jurisdiction over Non–Estate Funds?

■ In the context of a chapter 7 proceeding, the Fourth Circuit has made it clear that

---

3. The factual determination that the funds sought to be used by the Appellants were, in fact, post-petition wages (or advances against post petition wages) was a necessary predicate finding for the bankruptcy court's ruling, and is not clearly erroneous.

4. Although in the context of sole proprietorships, it has proven to be the source of some debate. *Compare, e.g., In re FitzSimmons,* 725 F.2d 1208 (9th Cir.1984) (from post-petition earnings of sole proprietorship, court determines portion attributable to services 'personally' rendered; that amount is excluded from estate), *with In re Cooley,* 87 B.R. 432 (Bankr.S.D.Tex.1988) (burden on creditors to show amount of post-petition earnings actually derived from property of estate as opposed to sole proprietor's personal services), *and In re Herberman,* 122 B.R. 273 (Bankr.W.D.Tex.1990) ( all income of sole proprietorship property of the estate; court then determines fair 'wage' to be paid to debtor and excluded from estate). These cases all address the problem of separating income derived from the business itself, which is in the estate, and income derived from the personal services of the debtor, which is not in the estate. In the instant case, as the funds in question come entirely from personal services performed for entities not in the estate, these issues do not apply. Despite their differing approach to the sole proprietorship issue, it is important to note that all of these cases hold that income derived solely from personal services ('wages') are excluded from the estate by § 541(a)(6).

5. *See, e.g., Matter of Clark,* 891 F.2d 111, 115 (5th Cir.1989); *In re Prince,* 127 B.R. 187, 192 (N.D.Ill.1991) *aff'd* 85 F.3d 314 (7th Cir.1996);

*In re Millerburg,* 61 B.R. 125 (Bankr.E.D.N.C. 1986); *In re Lundeen,* 207 B.R. 604, 610 (Bankr. S.D.Ind.1997); *In re Powell,* 187 B.R. 642 (Bankr.D.Minn.1995); *In re Attanasio,* 218 B.R. 180, 221–23 (Bankr.N.D.Ala.1998). The sole exception is *In re Harp,* 166 B.R. 740 (Bankr. N.D.Ala.1993), which found that all post-petition wage income was property of the estate. *Harp,* however, rests upon a mistaken reading of *Herberman. See Herberman,* 122 B.R. at 286, 287 n. 19 (income from wage earners not working for the estate is not included in the estate); *see also In re Reed,* 184 B.R. 733 (Bankr.W.D.Tex.1995) (Judge Clark clarifying that his reasoning in *Herberman* was only applicable to sole proprietorships, not individual wage earners); *In re Larson,* 147 B.R. 39, 43–44 (Bankr.D.N.D.1992) (discussing limitations in applying *Herberman* to individual wage earners). *Harp's* interpretation of 541(a)(6), finding that all post-petition wages are property of the estate and therefore must be used to satisfy the claims of creditors, cannot be reconciled with the Supreme Court's statement in *Toibb v. Radloff,* 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991) that "there is no . . . provision in Chapter 11 requiring a debtor to pay future wages to a creditor[.]" *Id.* at 166, 111 S.Ct. at 2202; *see also infra.*

6. The Court uses the term 'wages' to indicate the post petition earnings of an individual not in business for herself, as contrasted to the earnings of a sole proprietorship. The Court would note that the terms 'wages' and 'earnings' are often used interchangeably in the prior case law.

creditors and the court retain no claim or jurisdiction over funds excluded from the estate by operation of § 541(a)(6). "[post-petition wages]... are excluded from [the debtor's] bankruptcy estate, and he may use and enjoy them free from the claims of his creditors." *Andrews*, 80 F.3d at 909. "Post-petition assets are those that result from the debtor's post-petition activities and are his to keep free and clear of the bankruptcy proceeding." *Id.* at 910. The Fourth Circuit described § 541(a)(6) as a "bright-line" rule, allowing the two overarching purposes of the Bankruptcy Code to be harmonized. *Id.* at 909–10. Those two purposes are "(1) providing protection for the creditors of the insolvent debtor and (2) permitting the debtor to carry on and rebuild his life, that is, to make a 'fresh start'" *Id.* (citations omitted). By marking a clear division between estate assets, which are protected for the benefit of creditors and subject to the jurisdiction of the bankruptcy court, and post petition earnings, over which the bankruptcy court and creditors have no jurisdiction, both purposes are fulfilled. It is apparent that in the context of a chapter 7 proceeding, the bankruptcy court would have no jurisdiction to prevent the use of non estate assets for the retention of counsel unrelated to the bankruptcy proceeding.[7] The question is whether individuals proceeding under chapter 11 are treated differently. The Court finds that they are not.

■ In *Matter of Hargis*, 887 F.2d 77 (5th Cir.1989), the Fifth Circuit, ruling on a petition by the United States Trustee for the disgorgement of post-petition, non-estate funds paid by an individual in chapter 11 bankruptcy to his bankruptcy counsel, stated "the bankruptcy court had no authority to order disgorgement of the funds received by [counsel], which consisted wholly of non-estate assets." *Id.* at 79. The U.S. Trustee in *Hargis* argued that the use of non-estate funds would injure creditors whose claims might survive bankruptcy. *Id.* This argument is quite similar logically to the argument put forth in the instant case that the use of post-petition funds would injure creditors in any future reorganization plan.[8] The Fifth Circuit, however, rejected the argument, noting that "the intended congressional solution was not the establishment of sweeping regulatory power over non-estate property. Arguably, any use of such property harms creditors whose claims may survive bankruptcy; *yet there are no legislative inhibitions on the use of these funds.*" *Id.* at 79–80 (emphasis added). Upon rehearing for clarification, the Fifth Circuit noted that while 11 U.S.C. § 329 authorizes the bankruptcy court to review for reasonableness all fees paid to counsel for services rendered in connection with a bankruptcy proceeding, § 329 does not apply to services rendered that are unrelated to the bankruptcy proceeding, and the bankruptcy court has no jurisdiction to review those fees. *Matter of Hargis*, 895 F.2d 1025 (5th Cir.1990). The bankruptcy court, therefore, retains no jurisdiction over fees paid out of non-estate assets to counsel in proceedings unrelated to the bankruptcy. *Cf. In re Walters*, 868 F.2d 665, 667 (4th Cir.1989) ("Certain services by attorneys... are so unconnected to bankruptcy that a bankruptcy court is without jurisdiction to review them under § 329.").[9] Crucial in this analysis as it applies to the instant case is the bankruptcy court's factual finding, which is not clearly erroneous, that the criminal proceedings were so tenuously connected

---

7. *See also* Section C, *infra*.

8. *See also Powell*, 187 B.R. at 647 (rejecting argument that if post-petition wages are excluded, no assets will be available to satisfy claims).

9. The Court notes that while the phraseology in *Walters* suggests that Bankruptcy Rule 2017(b), which implements 11 U.S.C. § 329, provides for a more broad scope of review than § 329, the Bankruptcy Rules cannot enlarge the court's jurisdiction beyond that granted by statute. 28 U.S.C. § 2075. The scope of Bankruptcy Rule 2017(b), therefore, is coextensive with § 329. Regardless, however, the Court finds that the representation provided by the criminal counsel in this case is not "in connection with a bankruptcy proceeding," as that phrase is used in *Walters*. 868 F.2d at 668.

Some courts have found limits to the bankruptcy court's review even in representation on bankruptcy matters, when fees are paid by non-estate funds. *See, e.g., David & Hagner, P.C. v. DHP*, 171 B.R. 429 (D.D.C.1994) *aff'd* 70 F.3d 637 (D.C.Cir.1995); *In re McDonald Bros. Construction*, 114 B.R. 989 (Bankr.N.D.Ill.1990).

to the bankruptcy process that the benefit to the estate was purely theoretical. The Court finds that the criminal representation sought by the Appellants is simply too attenuated to the bankruptcy proceeding to create jurisdiction over the matter for the bankruptcy court.

Nor does this analysis change when one considers that the Appellant's post-petition income was the sole source of funding for their future plan of reorganization.[10] As the Supreme Court noted, "there is no... provision in Chapter 11 requiring a debtor to pay future wages to a creditor." *Toibb*, 501 U.S. at 166, 111 S.Ct. at 2202. As there is no requirement to use non-estate property to fund a plan of reorganization, *see, e.g. In re Molina Y Vedia*, 150 B.R. 393, 400 (Bankr. S.D.Tex.1992), to allow creditors to contest the use of funds exempted by § 541(a)(6) and force those funds to be reserved for a future, as yet unproposed plan, is in essence to read § 541(a)(6) out of the code and treat post-petition wages functionally as estate property. It is logically inconsistent with the exercise of exempting property from the estate, with the case law interpreting 541(a)(6), the concept of the estate as a separate entity, and with the concept of the 'fresh start,' as first discussed in *Local Loan v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934), if property nominally exempted from the estate can be required to be used for the benefit of the estate.[11] *See Powell*, 187 B.R. at 647. If there is no statutory requirement to pay future wages to a creditor, the bankruptcy court cannot create such a requirement simply because it feels the debtor has no other choice but to use such funds.[12] If the bankruptcy court cannot compel the use of future wages in reorganization, then it cannot prevent the use of those funds for other purposes either.

As the Fourth Circuit noted in *Andrews*, 80 F.3d at 909–10, by creating a bright line rule in 541(a)(6), Congress created a distinction between estate property, which must be used for the protection of creditors, and non estate funds, which may be disposed of as the debtor "sees fit, without having to further account to the bankruptcy estate, his creditors, or any subsequently appointed trustee... [and can be used] to buy food, shelter, clothing, or, if he chose, to unwisely invest in penny stocks in gold mine ventures."[13] *Reed*, 184 B.R. at 740. Or indeed to hire criminal defense counsel, even if the bank-

---

**10.** This assumes, of course, that a plan funded solely or largely by future earnings would be confirmable. The Court notes that some jurisdictions, perhaps due to Thirteenth Amendment concerns, have refused to confirm such plans on the basis that the assignment of future earnings is contrary to public policy. *See In re Flor*, 166 B.R. 512 (Bankr.D.Conn.1994). The Bankruptcy Court for the District of Vermont refused to confirm a chapter 11 reorganization plan funded by future earnings not because the assignment of future wages itself violated the Thirteenth Amendment, but rather because such a promise could not be enforced due to the Thirteenth Amendment. The court therefore concluded that the requirements of 11 U.S.C. § 1129(c)(11) could not be met by a reorganization plan funded by post-petition wages. *In re Bolton*, 188 B.R. 913 (Bankr.D.Vt.1995) `citing Matter of Stegall*, 865 F.2d 140, 142 (7th Cir.1989) (promise of work unenforceable due to Thirteenth Amendment); *cf. Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 204, 108 S.Ct. 963, 967, 99 L.Ed.2d 169 (1988) ("respondents' promise of future services is intangible, inalienable, and, in all likelihood, unenforceable"); *see also In re Kovalchick*, 1995 WL 118171 at *9 (Bankr. E.D.Pa.1995) (unpublished) (rejecting proposed plan because future earning power too specula-

tive). The question of whether a plan funded entirely by future earnings can, in fact, be confirmed is not before the Court, and the Court makes no finding on the issue.

**11.** Nothing prevents a debtor from voluntarily assigning non-estate property for the benefit of the estate, or even for the benefit of a specific creditor. *See, e.g., Attanasio*, 218 B.R. 180, 221–23 ("no section of the Bankruptcy Code forbids a debtor from preferring one creditor over another from post-petition earnings"); *Hargis*, 887 F.2d at 79 (Debtor may favor one creditor over another with post petition earnings). The bankruptcy court cannot force such an assignment, however, either directly, or indirectly by refusing to allow debtor to use the funds for purposes other than benefitting the estate.

**12.** The debtor could always voluntarily convert to chapter 7.

**13.** Of course, the fact that post-petition wages are outside the estate also means that such funds may be outside the protection of the bankruptcy court. *See, e.g., El–Amin*, 126 B.R. at 860 (former spouse may collect support obligations from post-petition income).

ruptcy court thinks it unnecessary or unwise.[14]

## C. Debtor's Status as Trustee

■ Appellees argue that as Appellants applied for approval of the employment of counsel pursuant to 11 U.S.C. § 327(a),[15] the bankruptcy court had jurisdiction to review and reject the application. This argument fails to address the underlying question, however, of whether application to the court was required at all. An unnecessary, or mistaken application does not create jurisdiction where none existed previously. *See, e.g., In re Fernandez,* 97 B.R. 262 (Bankr.E.D.N.C.1989) (Individual in chapter 11 petitioned court for permission to use post-petition wages. Court dismissed application as unnecessary, as post-petition wages were not part of the estate, and debtor needed no permission from court to use such funds).

Debtors in the instant case were serving as trustees of the bankruptcy estate. Certainly all actions taken by the debtors in the context of their duties as trustees come under the supervision of the bankruptcy court. The danger, however, is in misinterpreting the scope of the trustee's duties and responsibilities. Contrary to *Herberman's* oft-misunderstood declaration that "there can be no 'part' of a debtor that is not 'in bankruptcy' during the pendency of a chapter 11 proceeding," 122 B.R. at 279; *but see Reed,* 184 B.R. at 739, it is clear that not every activity of a debtor in possession acting as trustee falls under the direct supervision of the bankruptcy court.

■ While the debtor in possession in an individual chapter 11 case usually serves as trustee, it is important to note that this is not necessarily the case. *See, e.g.,* 11 U.S.C. § 1104 (allowing for the appointment of a trustee for cause). Trustees, whether debtors or third parties, have legally established responsibilities to the beneficiaries of the trust *res,* i.e. the creditors of the estate, but those duties do not subsume every aspect of the trustee's life. A third-party trustee, while he has a fiduciary duty to the estate, has no such duty in regard to his own property, and would hardly be required to petition the bankruptcy court for permission to use his own funds to hire a criminal defense counsel were the trustee to become indicted or investigated for events unrelated to the estate. The rights and responsibilities of the trustee are neither expanded nor limited simply because she also happens to be the debtor. For a debtor in possession serving as trustee,

"a fiduciary duty exists–but only with respect to estate funds. The debtor may do what he will with non-estate funds.

14. It should be noted that *In re Duque,* the principal case relied upon by the bankruptcy court, itself notes that creditors have no rights to postpetition earnings, and that post-petition earnings are the debtor's to keep. 48 B.R. 965, 969 (S.D.Fla.1984). *Duque* notes that when a bankruptcy case is opened, two separate entities, the estate and the debtor, are created. *Id.* The central holding of *Duque* turns on the premise that one entity, the estate, cannot be compelled to pay for what is essentially a personal expense of the other entity, the debtor. *Id.* at 970, 974–75. Nowhere in *Duque* is it suggested, however, that the converse would be true; that the debtor could be compelled to pay expenses of the estate. By restricting the use of non-estate funds that have not yet been promised to the estate (as in a plan of reorganization) in order to preserve those funds for the estate, however, the bankruptcy court has done just that. Nor is there any suggestion that the reasoning applied to the central issue in *Duque,* to wit, "whether bankruptcy estate money may be used to pay for criminal counsel for the debtor," *Id.* at 974, would have any applicability when estate moneys are not at issue. If the estate is not funding the defense, it

simply has no interest in it, as "it is difficult to perceive how the bankruptcy estate would be affected by criminal process." *Id.* at 973.

The Court also notes that Constitutional guarantees of counsel are not implicated by a refusal to compel the estate to pay for the defense of a debtor, as the estate is a separate entity from the debtor (and there is no Constitutional right to a defense funded by a private third party). The refusal of a bankruptcy court to allow a debtor to fund her own criminal defense, however, may implicate Constitutional concerns. This issue is not before the Court, as Mrs. Roland has not been indicted.

15. § 327. Employment of professional persons

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

This duty is equivalent to that of the trustee of a trust. By arguing that the debtor-in-possession owes a duty with respect to non-estate funds, the [objector], in effect, maintains that the trustee of a trust has a duty to beneficiaries, not only with respect to the res of the trust, but also with respect to the trustee's own personal property. Such a proposition is absurd under the law of trusts; there is no distinction that makes it any less absurd in the bankruptcy context."

*Hargis,* 887 F.2d at 79. "Property of the estate is not determined by the debtor-in-possession's fiduciary obligations to the estate; rather, the scope of the debtor-in-possession's fiduciary obligation is determined by the property constituting the estate. Irrefutably, the debtor-in-possession owes no obligation to the estate for non-estate property." *Molina Y Vedia,* 150 B.R. at 400; *see also Powell,* 187 B.R. at 646–47.

The duties of the trustee, therefore, are limited to those areas and responsibilities which relate to, concern, or affect the bankruptcy estate. In the instant case, the bankruptcy court has found that the criminal representation had, at best, a theoretical relation to the estate. The Court finds that the matters for which the Appellants sought to retain criminal counsel are simply not related to, concerning, or affecting the bankruptcy estate. In short, they do not fall within the scope of the trustee's duties and responsibilities, and therefore § 327 does not apply, and the permission of the bankruptcy court was not required for what was essentially a matter solely confined to the Appellants as individuals separate from the bankruptcy estate.

## D. Creditor's Recourse

■ This is not to say, however, that the bankruptcy court must be completely uninterested in the debtor's use of non-estate funds, nor does it mean that the debtor's use of funds is completely irrelevant to the concerns that may eventually come before the bankruptcy court. While the bankruptcy court cannot extend its jurisdiction beyond the statutory grant, once the debtor has voluntarily offered to bring the funds within the purview of the bankruptcy court, the court may certainly consider the uses to which those funds have been put. For example, while the court in *Fernandez* dismissed the debtor's application for the use of post-petition wages as being unnecessary due to the funds being outside the estate, the court went on to note that once the debtor proposed a plan of reorganization, "[i]f the debtor's plan provides that the debtor will use his substantial income to make heavy mortgage payments on a lavish house, to pay for luxury cars, and to generally support an extravagant lifestyle, the plan may not meet the confirmation requirements of 11 U.S.C. § 1129(a) . . . a plan must be proposed in good faith to be confirmable[.]" 97 B.R. at 263. In other words, while the bankruptcy court cannot prevent or require the use of these funds, the manner in which those funds are used may certainly later be considered when the bankruptcy court weighs a proposed plan of reorganization for good faith, feasibility, and other concerns before confirmation.[16] As the Bankruptcy Court for the District of Massachusetts explained:

"[T]he fact that a debtor's postpetition earnings are not property of the estate does not mean that the court is precluded from considering those earnings in connection with a determination of a debtor's good faith in proposing a plan. . . . [A]n individual debtor's conduct with respect to nonestate property is highly relevant to a determination of a debtor's good faith under § 1129(a)(3). In order to demonstrate that a debtor has made its best effort to repay creditors, it is certainly appropriate to examine both the use of the debtor's resources during the administration of a Chapter 11 case and the debtor's projected use of those resources after confirmation of the debtor's plan."

16. For this reason, the bankruptcy court must still be kept informed of the sources and use of non-estate funds, even if the court has no direct control over such funds. *See, e.g., United States v. McIntosh,* 197 B.R. 688, 690–91 (D.Kan.1996) *aff'd in part, reversed in part* 124 F.3d 1330 (10th Cir.1997) (Criminal prosecution for bankruptcy fraud for, among other issues, concealing post-petition earnings from court, regardless of their exclusion from estate, when such earnings would be relevant to the question of whether debtor could fund a chapter 11 reorganization plan).

*In re Weber,* 209 B.R. 793, 798–99 (Bankr. D.Mass.1997).

Creditors who disagree with the wisdom of the Appellants' decision to employ criminal counsel, therefore, have their recourse not in seeking to extend the jurisdiction of the bankruptcy court beyond its statutory limitations, but rather in pursuing one of their options under the bankruptcy code. These options include seeking to have their debts declared nondischargeable, refusing to accept the plan, moving for the appointment of a trustee, and moving for conversion or dismissal. *See, e.g., In re Altchek,* 124 B.R. 944, 956–57 (Bankr.S.D.N.Y.1991); *In re Keenan,* 195 B.R. 236, 241–43 (Bankr.W.D.N.Y.1996) ("there is no requirement of law that the debtors commit, on an ongoing basis, any portion of their post-petition service income to their creditors or to a Plan of Reorganization. If the [debtors] cannot reach accord with their objecting creditors about how... personal service income will be used on an ongoing basis, then the creditors must decide whether to pursue a recognized right (to seek conversion, to seek a trustee, etc.) on that basis").

The bankruptcy court, in its' review of Appellants' future plan of reorganization, can certainly review the propriety of Appellants' payments to counsel in relation to determining good faith, among other concerns, and should the court find that the payments were improper, such a finding might be the basis for a refusal to confirm Appellants' plan.[17] *See, e.g., In re Tejano,* 135 B.R. 686, 687–88 (Bankr.D.Kan.1991) (rejected proposed plan for lack of good faith in use of post-petition funds; noted that previous plan which largely involved paying counsel with post-petition funds was also rejected).

### V. Conclusion

At the time of the filing of Appellants' request, no legal requirement compelled them to utilize their post-petition funds in any manner other than how they saw fit. The bankruptcy court cannot create such a requirement in anticipation of a possible reorganization strategy, where no such require-

ment exists in law. Nor can the bankruptcy court exert approval authority over the employment of counsel when the scope of that employment, the issues on which counsel's services are sought, and the funds used to compensate counsel are all unrelated to the bankruptcy proceeding. The bankruptcy court therefore could not prevent the employment of criminal counsel by the Appellants. The concerns of the bankruptcy court and the creditors in regards to the propriety of the Appellants' use of funds are still relevant, however, to the bankruptcy proceeding as it goes forward.

For the foregoing reasons, the decision of the bankruptcy court is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this order.

The Clerk is **DIRECTED** to send a copy of this order to counsel for Appellants and counsel for Appellees.

It is so **ORDERED**.

---

**17.** Assuming, of course, that the future plan of reorganization proposed the use of Appellants' post-petition income.